Jerome Kenneth MACK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16903.

United States Court of Appeals
Eighth Circuit.

Jan. 21, 1964.

David G. Dempsey, Clayton, Mo., Eaker, Dempsey, Heath & Dempsey, Clayton, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

### Facts

Appellant Jerome Kenneth Mack stands convicted on two counts of an indictment alleging separate narcotic violations under 21 U.S.C.A. § 174[1] and 26 U.S.C.A. § 4705(a).[2]

The grounds of appellant's appeal are twofold. He raises the question of the sufficiency of the evidence supporting the jury verdict rendered against him and complains of a deprivation of his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution.

Focusing our attention firstly to the problem of the adequacy of evidence to support the verdict of guilty under the statutes involved, this Court is mindful of the fact that the government prosecuted appellant on the basis he aided and abetted in the unlawful possession and sale of narcotics by one Ivory C. Moore, who, at the time of appellant's trial, had pleaded guilty and been convicted of the commission of these offenses. Because under 18 U.S.C.A. § 2 one who aids and abets in the commission of a crime stands in the shoes of the principal insofar as imposable punishment is concerned, the burden of proof must encompass the same elements required of the government to convict the principal offender. Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962); United States v. Jones, 308 F.2d 26 (2nd Cir. 1962). In the language

1. "Whoever fraudulently or knowingly imports * * * any narcotic drug into the United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported * * * contrary to law * * * shall be imprisoned not less than five or more than twenty years, and in addition, may be fined not more than $20,000. * * *

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

of this Court in Johnson v. United States, 195 F.2d 673, 675 (8th Cir. 1952):

"(T)o find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed."

Since the jury's verdict must be sustained if there is substantial evidence to support it, the following resumé of the pertinent facts must therefore be cast in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McKenna v. United States, 232 F.2d 431 (8th Cir. 1956).

The evidence indicated that on the afternoon of March 3, 1961, United States narcotic agent, James Parker, working undercover at the time, contacted in person Ivory C. Moore, at a bar in St. Louis, Missouri, for the purpose of arranging a sale of narcotics. After meeting Moore and agreeing to pay $80.00 for forty "plays" of narcotics, Parker was escorted by Moore out of the bar and across the street to where the appellant was seated behind the steering wheel of appellant's car parked at the curbside. Parker seated himself in the right rear seat of the vehicle while Moore sat down in the right front passenger seat next to appellant. Shortly thereafter, two men at separate intervals approached appellant's car from the curbside and conversed with Moore through the car's open window. On both occasions, the men handed Moore money in bill form through the window, whereupon Moore reached his hand outside the window three or four times placing his closed fingers in the outstretched palms of the unidentified recipients in a manner which gave the appearance of a transfer of small objects. Then Moore, in appellant's presence, requested agent Parker to give him $83.00 so that he could "give the man (meaning appellant) something for the trip". Parker complied, at which time Moore instructed him to get out of the car and await his return with Moore's reassurance, "do not worry,

I'll be back with the stuff". Within less than one-half hour of their departure, appellant and Moore returned in the former's car to where Parker had remained waiting for them on the street. Moore exited the car, standing next to Parker alongside the open front door on the sidewalk. Parker entered the front seat of the car, sitting not over six inches from appellant who was behind the steering wheel. Parker observed a small tinfoil wrapped package on the front seat between himself and appellant. Parker then held the tinfoil package up before him, opened it, and observed its contents to be many small capsules containing a white powder substance. Parker queried Moore, who had remained outside the automobile, if everything was straight, and Moore replied affirmatively. Parker subsequently departed and rejoined an accompanying narcotic agent who had driven to the scene of the sale and had kept the activities of the transaction under surveillance from a government vehicle parked approximately two blocks away. That same day the agents counted the tinfoil package's contents, finding forty capsules therein and marked the package with their initials for identification. Ultimately, the capsules were analyzed by a United States chemist with the Alcohol and Tax Division of the Internal Revenue Service in Omaha, Nebraska, who testified they contained heroin hydrochloride, a narcotic derivative of opium.

The only evidence offered by appellant was the testimony of Ivory C. Moore. Moore denied any sale or transfers of narcotics to the two men who approached him in appellant's car but explained the incident as being only a conversation about an earlier discussion the three had concerning sharing of the cost of some drinks. Moore admitted his sale of the narcotics to Parker but denied that appellant had knowledge of or was a party to the transaction in any fashion. Moore testified he told appellant he would pay him a couple of dollars to drive to the house of Moore's brother to pick up some clothing he intended to pawn and that

appellant was unaware of the real nature of Moore's trip.

### Opinion.

█ Essentially, § 174 proscribes the knowledgeable illegal importation of narcotics into the United States and disposition thereafter knowing of the unlawful entry. In lieu of proof of these proscribed activities, the statute also provides that mere proof of possession of narcotics by the defendant is sufficient evidence to authorize conviction unless he explains the possession to the satisfaction of the jury. The authorities interpreting the form of possession required proven to raise the presumption of guilt have consistently held that constructive as well as physical or actual possession suffices. Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961); United States v. Santore, 290 F.2d 51 (2nd Cir. 1960), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961); Cellino v. United States, 276 F.2d 941 (9th Cir. 1960); United States v. Landry, 257 F.2d 425 (7th Cir. 1958). Constructive possession, as opposed to physical custody, presupposes a power to exercise dominion and control over the narcotics, susceptible of proof by either direct or circumstantial evidence. Hernandez v. United States, supra; United States v. Jones, supra; Lucero v. United States, 311 F.2d 457 (10th Cir. 1962).

█ The government, however, may not short-circuit its proof of possession as to appellant on the theory that he aided and abetted the principal offender in whom possession of the drug existed. As succinctly pointed out to the contrary by the court construing this statutory provision in Lucero v. United States, supra, 311 F.2d at 459, actual or constructive possession of the aider and abetter must be proven:

"Otherwise, an aider and abetter would be required to explain away not his possession but the possession of another."

Moreover, the principal's mens rea may not be imputed to the aider and abetter in order to sustain the latter's conviction, but his specific knowledge and intent to commit the crime must be proven by the prosecution. Hernandez v. United States, supra; United States v. Jones, supra; Johnson v. United States, supra.

█ Therefore, the issue is whether appellant had actual or constructive possession of the narcotics coincident with the requisite criminal intent or knowledge. Appellant submits that although his car was used to deliver the narcotics, he could not possess that which he did not know existed. From the evidence, appellant unquestionably knew that Moore, the vendor, sold agent Parker, the vendee, something for the approximate price of $83.00, the sale having been consummated in appellant's car and presence. Appellant also knew that the need for hire of his car and the purpose of Moore's trip was to obtain the "stuff" promised Parker upon their return, and not as Moore testified to run a personal errand for himself. While appellant's guilt cannot be dependent upon mere association with a dope peddler, this association and the suspicious circumstances enshrouding Moore's "sales" to the unidentified purchasers are sufficient to charge appellant, apparently an average intelligent adult, with knowledge of Moore's connoted reference to narcotics in his subsequent use of the word "stuff". The courts have previously recognized this term's narcotic trade significance under similar circumstances and context of use. Parente v. United States, 249 F.2d 752 (9th Cir. 1957); Enriquez v. United States, 293 F.2d 788 (9th Cir. 1961); cf. Batsell v. United States, 217 F.2d 257 (8th Cir. 1954). But more significantly, the most destructive evidence of appellant's argument he was unaware of the existence of narcotics in his car are the facts surrounding the narcotics' delivery to agent Parker during daylight hours on the front seat of appellant's automobile while appellant was seated nearby with an unobstructed view

of the event. Parker found the tinfoil wrapped container of narcotics lying in plain view on the front seat a scant six inches from where appellant was seated. In close proximity to appellant, Parker unwrapped the package revealing the capsules of narcotics. Despite the appellant's silence throughout the chain of events, the evidence justifies the jury's finding beyond a reasonable doubt that the appellant had knowledge of the narcotics' existence in his automobile during the return trip after its procurement as well as at the time delivery was effected to the government agent. Compare this finding with that in Morei v. United States, 127 F.2d 827 (6th Cir. 1942) wherein the court recognized that an inference could be drawn that one who drives an automobile in which narcotics are transported knows of that fact. However, in that decision the court absolved the defendant's hired chauffeur of any knowledge of the narcotics' presence in the former's automobile in view of the facts that the narcotics were transported on the automobile's back seat during the hours of darkness, the chauffeur's presence was explainable by virtue of his employment, and there was no conversation with reference to narcotics, in the vernacular of the trade or otherwise, during the trip. The converse of these circumstances in the case at bar renders Morei inapplicable.

As to the question of appellant's own possession, actual or constructive, under § 174, proof of exclusiveness is unnecessary since the power to control or exercise dominion over narcotics is capable of being shared. Hernandez v. United States, supra. While the evidence or lack thereof might justify the conclusion that only Moore had actual possession while in appellant's automobile en route from procurement of the narcotics to the situs of its delivery to Parker, immediately prior to delivery appellant had constructive possession if not actual possession as well. At this point, Moore had gotten out of appellant's automobile, the narcotics were deposited on the seat next to appellant, and only he, prior to the agent's entry and receipt thereof, had any degree of actual possession and full control over their disposition. It has even been held that evidence of delivery of narcotics in the same automobile in which the defendant had been observed alone with a narcotics supplier in the vicinity of the place where deliveries were made is indicia of defendant's possession. Teasley v. United States, 292 F.2d 460 (9th Cir. 1961). The case for constructive possession here is strengthened by the fact that appellant tacitly approved if not affirmatively of his vehicle's being used as the depository for the narcotics' safekeeping prior to effectuation of the sale. Thus, the jury's finding appellant guilty of knowledgeable possession of narcotics in violation of § 174 is substantiated by both direct and strong circumstantial evidence. In Miller v. United States, 302 F.2d 659 (9th Cir. 1962), the defendant's conviction under § 174 was upheld, notwithstanding the lack of direct evidence of his possession, on the basis of only the circumstantial evidence linking the narcotics' storage to his hotel room. Accord: United States v. Malfi, 264 F.2d 147 (3rd Cir. 1959) and United States v. Pisano, 193 F.2d 355, 31 A.L.R.2d 409 (7th Cir. 1951).

The government also submits that substantial evidence underlies the jury's finding appellant aided and abetted defendant Moore in the sale of narcotics in contravention of 26 U.S.C.A. 4705(a). The latest pronouncement by this Circuit as to the applicable test in determining whether a defendant aided and abetted the sale of narcotics is set out in Mays v. United States, 261 F.2d 662 (8th Cir. 1958). Quoting from the Supreme Court's opinion in Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), which in turn voiced the words of the eminent jurist, Judge Learned Hand, we reiterate:

" * * * In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about,

that he seek by his action to make it succeed.'" Nye & Nissen v. United States, supra 336 U.S. at 619, 69 S. Ct. at 770, 93 L.Ed. 919.

In the instant case, appellant was in attendance at the closing of the venture's negotiations in his automobile. His providing and operating the means of transportation for supply of the sale's illegal subject matter constituted an essential contribution to the commission of the crime. Moreover, his share of the remuneration from the venture's profits, although minimal, amply demonstrates that he had a material interest in achieving the success of the sale. The appellant's remaining mute during the conduct of the transaction does not overshadow the convincing evidence which condemns him as a silent partner to this nefarious undertaking. See Alexander v. United States, 241 F.2d 351 (8th Cir. 1957).

It is finally contended that appellant's conviction should not be allowed to stand because he was denied his right to a speedy trial in violation of the Sixth Amendment to the Constitution.

The offense was committed on March 3, 1961; the indictment was issued on June 29, 1961; appellant was arrested July 7, 1961; and his trial commenced on September 18, 1961.

There is nothing in the record to indicate that appellant made any effort to secure a more speedy trial. The trial was commenced six and one-half months from the date of the commission of the offense, less than three months after appellant was arrested and within three months of the issuance of the indictment. Three cogent reasons reflect the invalidity of appellant's contention that his constitutional rights were infringed. First, from a standpoint of time, it is obvious that appellant received a speedy trial. Secondly, it is settled law that in order to establish the right to a speedy trial under the Sixth Amendment this right must be asserted in some manner by the defendant or it is deemed waived. Finally, appellant's chief complaint is the lapse of time between the commission of the offense and the government's filing of the indictment, whereas the provisions of the Sixth Amendment guarantee the speediness of the trial itself, but have no application to the time elapsing between the commission of the offense and the filing of the indictment.

There is no evidence as to whether or not the indictment was processed in the ordinary course of the proper dispatch of the court's business, but there is testimony to the effect that the narcotics upon being purchased by the government agent were forwarded to Omaha, Nebraska to the Treasury Department for chemical analysis by the Alcohol and Tobacco Tax Division of the Internal Revenue Service. The record shows that the government exhibit which was received by the Omaha Laboratory on March 8, 1961 was analyzed and kept in safekeeping by the chemist who brought it to the trial. There is no specific evidence as to when the laboratory report was made available to the law enforcement agencies, but the chemist who testified related that he performed several thousand tests on several hundred samples annually as his office covers a nine state area. By reason of the volume of the business there could have been an ordinary delay in preparation of the report. However, there is nothing to suggest any dilatory action on the part of any agency of the government which prejudiced appellant in the preparation of his defense.

This Court has gone so far as to hold that the lapse of a period of over five years between the commission of a crime and trial does not per se establish denial of speedy trial within intendment of the Sixth Amendment and one complaining of delay must affirmatively demand his right of trial. Bayless v. United States, 147 F.2d 169 (8th Cir. 1945), rev'd. on other grounds 150 F.2d 236 (8th Cir. 1945). In a later decision, the Second Circuit reaffirmed this principle in United States v. Lustman, 258 F.2d 475, 478

(2nd Cir. 1958), cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958):

"The federal decisions, however, clearly establish that the right to a speedy trial is the defendant's personal right and is deemed waived if not promptly asserted. United States v. Kaye, 2 Cir., 1958, 251 F.2d 87, certiorari denied 1958, 356 U.S. 919, 78 S.Ct. 702, 2 L.Ed.2d 714; Collins v. United States, 9 Cir., 1946, 157 F.2d 409; Bayless v. United States, 8 Cir., 1945, 147 F.2d 169, reversed on other grounds 1945, 150 F.2d 236; Pietch v. United States, 10 Cir., 1940, 110 F.2d 817, 129 A. L.R. 563, certiorari denied 1940, 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414; Worthington v. United States, 7 Cir., 1924, 1 F.2d 154, certiorari denied 1924, 266 U.S. 626, 45 S.Ct. 125, 69 L.Ed. 475; United States v. Research Foundation, D.C.S.D.N.Y. 1957, 155 F.Supp. 650; United States v. Stein, D.C.S.D.N.Y.1955, 18 F.R.D. 17; United States v. Provoo, D.C.D.Md.1955, 17 F.R.D. 183, 198, affirmed 1955, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761."

Appellant in his argument principally complains about the lapse of time between the commission of the crime on March 3, 1961 and the indictment on June 29, 1961, resulting in his arrest on July 7, 1961—something less than three months elapsing between the criminal act and the indictment and slightly more than three months elapsing between the commission of the offense and appellant's arrest. The provisions of the Sixth Amendment guaranteeing a speedy trial contemplate the undue delay in the prosecution of a pending charge and not the mere delay in the filing of a possible criminal charge. In short, there is no substance to appellant's claim that the government was guilty of laches in bringing its prosecution. See Parker v. United States, 252 F.2d 680, 681 (6th Cir. 1958), cert. denied, 356 U.S. 964, 78 S.Ct. 1003, 2 L.Ed.2d 1071 (1958).

The judgment of conviction is affirmed.

We wish to express our appreciation to Mr. David G. Dempsey of the St. Louis bar for his more than adequate representation of the appellant under court appointment and acknowledge the excellent quality of his brief and oral argument.