**UNITED STATES of America, Appellee,**

v.

**Mahlon Joseph STEWARD, Arthur Nathaniel Sands, Appellants.**

**Nos. 239, 240, Dockets 71–1739, 71–1740.**

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1971.

Decided Nov. 29, 1971.

Ronald E. DePetris, Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., David G. Trager, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Mark A. Landsman, Brooklyn, N. Y., for appellant Steward (on submission).

Phylis Skloot Bamberger, Robert Kasanof, Legal Aid Society, New York City, for appellant Sands.

Before MEDINA, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

These are appeals from judgments of conviction entered after a five day joint jury trial in the Eastern District of New York before the Honorable Anthony J. Travia in March, 1971. Each appellant was convicted of facilitating the transportation of heroin (21 U.S.C. §§ 173 and 174); sale of heroin (21 U.S.C.

§§ 173 and 174), or aiding and abetting these offenses (18 U.S.C. § 2); conspiracy to sell and facilitate the transportation (21 U.S.C. § 174); and using a gun to facilitate the transportation of heroin (18 U.S.C. § 924(c)).

Mahlon Joseph Steward and Arthur Sands who had known each other before, met in a florist shop in Queens on the afternoon of October 28, 1970. Sands drove Steward to a tavern on Farmers Boulevard where they met Mabel and Steven Wooden. Sands then drove Steward to the Skyway Motel near LaGuardia Airport. The Woodens followed in their own car. Joseph McMillan, a federal undercover agent and Detective Kenneth Bernhardt, a New York Police Department undercover agent, were waiting in a room at the Skyway Motel prepared to make a heroin purchase. McMillan had purchased heroin from Wooden and Steward in September and earlier in the month of October, 1970. McMillan met Wooden in the lobby of the motel and brought him to a room where Bernhardt showed $15,000 to Wooden. Wooden told them that he didn't want any funny business and that his people downstairs had their "roscoes" (guns). Wooden and McMillan then proceeded to the parking lot where Steward was standing alone at the rear of Sands' parked vehicle. Wooden told Steward that he had checked out the room and Steward said he would bring the stuff up to the room, including a shortage from a previous sale. After McMillan and Wooden had returned to the room, Steward came up, entered the room and removed from his waist a package containing 466 grams of heroin which he placed on the bed. On a prearranged signal other task force officers, who had been in the adjoining room, came in and made the arrests. A loaded revolver was found in Steward's possession. Later other agents, stationed near the parking lot, approached the Woodens' car where Sands was sitting with Mabel Wooden. Sands attempted to pull out a loaded gun from his waist but surrendered it to the police on request.

We affirm the conviction of Steward in all respects but reverse the conviction of Sands on all counts.

■ On appeal Steward argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Steward did testify on his own behalf. He claimed that he went to the florist to send a bouquet to a sick sister and there met by chance an acquaintance, Sands, who was on a comparable errand of mercy. Sands offered to drive Steward and they stopped for a drink at a tavern where Steward again by chance met another acquaintance, Wooden, who along with Mabel Wooden, wanted directions to the Skyway Motel. Sands drove Steward in the lead car to the motel, and Steward went upstairs only to use the bathroom. He claims he was pounced upon by the police as soon as he entered the room and that he did not have any drugs or gun. In view of the evidence that Wooden and Steward had sold drugs to McMillan twice before, that both Steward and Sands were armed and that Steward had brought the drugs to the room, the jury properly disbelieved his story. The evidence was certainly ample to sustain the conviction of Steward on all counts.

■■ Steward's other contention on appeal is that the trial court's charge to the jury was defective since they were not advised that they could acquit him even if they found that he had possession of the drugs. The Narcotic Drugs Import and Export Act * makes it a

---

* Law of Feb. 9, 1909, ch. 100, § 2, 35 Stat. 614, as amended. This Act was repealed and replaced by the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1236. For the sake of convenience reference will be made to the pertinent sections as they appeared in the 1964 edition of the United States Code.

21 U.S.C. § 173 (1964) provided in pertinent part:

"It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or juris-

crime to knowingly facilitate the illegal importation of narcotic drugs into the United States or to buy, sell, transport or conceal them knowing that they have been illegally imported. There is no direct proof that Steward knew the drugs were imported but the statute (§ 174) provides that a showing of the defendant's possession of the drug is sufficient evidence to authorize his conviction unless he explains the possession to the satisfaction of the jury. While the jury may infer knowledge from possession this does not relieve the government of its burden of establishing all of the elements of the crime beyond a reasonable doubt including the element of knowledge. United States v. Peeples, 377 F. 2d 205 (2d Cir. 1967). There is no question, as we have indicated, that Steward had actual possession of the heroin. Moreover, the statutory inference is sensible. "Concededly, heroin could be made in this country, at least in tiny amounts. But the overwhelming evidence is that the heroin consumed in the United States is illegally imported. To possess heroin *is* to possess imported heroin." Turner v. United States, 396 U.S. 398, 415–416, 90 S.Ct. 642, 652, 24 L.Ed.2d 610 (1970). We do not believe that the charge, to which no exceptions

were taken at trial, was erroneous. The court explained that the statute permitted the inference but also twice advised the jury that they were not bound to make the statutory inference and further charged that the jury had a duty to acquit a defendant if the government failed to prove every element of the crime beyond a reasonable doubt. The jury was repeatedly advised that they were the sole judges of the facts. See Turner v. United States, 396 U.S. at 406–407, 90 S.Ct. 642.

■■ While we have found the evidence was sufficient to sustain the conviction of Steward, we find it inadequate in the case of Sands. The government argues that the evidence was sufficient to establish that Sands had possession of the heroin or alternatively that such proof is not necessary where the aider and abettor or conspirator knows that a principal (Steward) had possession and where he was an active participant in the planned transaction. The government's alternative position that possession by Sands is not necessary is based upon what it urges to be the "better" view reflected in the evenly split *en banc* court in United States v. Santore, 290 F.2d 51, 74 (2d Cir. 1960), cert. denied, D'Aria v. United States, 365 U.S.

---

diction; except that such amounts of crude opium and coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate uses only may be imported and brought into the United States or such territory under such regulations as the Commissioner of Narcotics shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin. All narcotic drugs imported under such regulations shall be subject to the duties which are now or may hereafter be imposed upon such drugs when imported.
* * *"
21 U.S.C. § 174 (1964) provided:
"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of

any, such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.
"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

834, 835, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961). This overlooks the holding of a majority of this court in a later *en banc* case, United States v. Jones, 308 F.2d 26, 31 (2d Cir. 1962), where we held that, with respect to an aider or abettor who had no physical possession, his constructive possession must be established to warrant the inference of knowledge of illegal importation. That this rule is applicable to a conspirator, who must have the same *mens rea* as the aider and abettor, is established by United States v. Hysohion, 448 F.2d 343, at 347 (2d Cir. 1971) and by United States v. Hernandez, 290 F.2d 86, 90 (2d Cir. 1961): "Possession, actual or constructive, must be shown with respect to each individual conspirator, facilitator, or aider and abettor." The government cannot attribute Steward's possession to Sands and thereby establish the latter's knowledge of illegal importation—a necessary element of his conviction as a principal, conspirator or aider and abettor. Mack v. United States, 326 F.2d 481, 485 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964).

We cannot agree with the argument that Sands' possession of the heroin can be inferred from the fact that he was the armed chauffeur of the car which brought Steward to the motel. Looking at the facts in the light most favorable to the government, there is nothing to establish that Sands exercised any dominion or control over the drugs. The cases relied upon by the government are distinguishable. They involve situations where the defendant had exclusive dominion and control over a vehicle in which the drugs were found hidden, Arellanes v. United States, 302 F.2d 603 (9th Cir.), cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962) or where defendants had joint dominion and control over a vehicle wherein drugs were found secreted, Eason v. United States, 281 F.2d 818 (9th Cir. 1960). The drugs here were not found hidden in Sands' car, they were in the possession of Steward. In United

States v. Chiarelli, 192 F.2d 528 (7th Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683 (1952) the defendant's fingerprints were found on the envelopes containing the heroin which had been carried in his car. In both Mack v. United States, 326 F.2d 481 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964) and Teasley v. United States, 292 F.2d 460 (9th Cir. 1961) there was ample evidence to establish that the defendants were knowingly participating in and facilitating drug sales which were transacted in their presence. A recent case noted that constructive possession is found only where the defendant has set the price for the sale, or was able to assure delivery or had the final say as to the means of transfer. "[I]n all of the cases in which we have upheld a finding of constructive possession at least one of these indicia has been present." United States v. Febre, 425 F.2d 107, 111 (2d Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970).

Here there is ample evidence that Wooden and Steward were deeply involved in a criminal venture to sell drugs. They had done so before and were caught in *flagrante delicto* here. But Sands was never observed in any of the prior dealings and was not in the room when the arrest was made. McMillan testified that he never saw him until the day of the trial. There is no evidence at all to show that Sands knew that illegally imported drugs were involved. He was never observed handling the drugs, setting the price or in any way exercising the degree of control which has heretofore been required in these cases. In short, we find that the evidence was insufficient to establish the *mens rea* required for a conviction.

In view of this disposition of the case, it is unnecessary to consider the other arguments raised by appellant Sands. Since we reverse Sands' narcotics convictions, his conviction for the use of a gun during the commission of these felonies must also be reversed.

Steward's convictions are affirmed in all respects; Sands' convictions are reversed.

MEDINA, Circuit Judge (concurring):

I expected to differ from my brothers in this case, but, after a thorough study of the long line of cases in this Circuit construing and applying the statutory presumption of knowledge of importation of narcotics, I find that I cannot conscientiously dissent.

But I feel that some elaboration of the facts is necessary. The narcotics ring that the combined law enforcement officers of New York State and City, together with a federal Task Force, were trying to break up may be assumed, as usual, to consist of: one or more individuals at the top who supplied heroin in large or small quantities, but who under no circumstances ever participated personally in any negotiated sale or had heroin in their possession; the little peddlers and addicts at the bottom of the hierarchy, and men such as Steward and Wooden who negotiated sales of larger quantities of heroin; and intermediate executives who took charge of the delivery arrangements, protected such people as Steward and Wooden in making deliveries, brought back the money and assured a safe getaway if trouble was encountered. Just such an intermediate executive was Sands.

By drawing from the direct and circumstantial evidence the inferences which it is the jury's function to do, and by taking for granted those inferences favorable to the Government, this is the picture that emerges. Sands, driving a car, picked up Steward at a flower shop. They were not strangers to one another. Then came the familiar trip to a nearby bar where Sands and Steward meet the Woodens. After a time and several telephone calls, the package containing $15,000 worth of heroin appeared and Steward placed this package inside his shirt. Then Sands, driving the same car, with Steward in the back seat carrying the package of heroin under his shirt, led the cavalcade to the Skyway Motel, with the Woodens in their car tagging behind. The two cars were not parked together, but were separated by quite a space in the parking lot. During the time Wooden first went upstairs, and during the time Wooden, followed by Steward, went upstairs again, Sands sat in his car.

After the delay caused by the arrest of Steward and Wooden upstairs Sands, suspecting that all was not well, moved over to the Wooden car and sat down in the driver's seat beside Mrs. Wooden. He had a loaded pistol tucked in between his shirt and his trousers ready for immediate use. At the first sign of the police he was prepared to shoot his way out and drive off, at least saving himself and Mrs. Wooden. Indeed, had it not been for quick work on the part of Detective Robert Ryan in sneaking up and getting the drop on Sands as he pulled out his gun, Sands and Mrs. Wooden would have escaped and there would have been just one more dead law enforcement officer. The suggestion by counsel for Sands that there was no proof that the keys were in the ignition when Sands got in the Wooden car is designed to convince us that Sands was perhaps an innocent bystander or a casual or unknowing facilitator, but this is a wholly inadmissible and erroneous position. It is ridiculous to suppose that Wooden, engaged in this dangerous undertaking, would put the keys in his pocket when he went upstairs with Steward, leaving his wife in a car that could not even be started in case of trouble. It will be recalled that it was this same Wooden who had told Agent McMillan and Patrolman Bernhardt not to start any funny business because his men downstairs had their "roscoes." That his men, including Sands, had loaded pistols on their persons was clearly proved.

Moreover, I think the proofs warranted a finding that each of the participants, including Sands, knew they were making a delivery of heroin.

It seems strange that, despite all this, the conviction of Sands for the substantive offense, for aiding and abetting, for conspiracy and for the use of a firearm in connection with the delivery of the heroin, should be set aside. It may be difficult for the man in the street to understand this. The simple reason, however, is that the Congress made it an essential ingredient of the crimes charged in this indictment that there be proof of knowledge on the part of a defendant that the heroin had been imported. There was no such proof. And the statutory presumption of knowledge only applies if the proofs show that the defendant was in actual or constructive possession of the heroin. There was no such proof. Fortunately, this statute has been repealed.

And so, I suppose, Sands may soon be back on the streets plying his nefarious trade, with the benefit of the experience he has had in this case. There is some likelihood, however, that he may still be prosecuted under New York law for possession of the pistol without a license, as one of the witnesses in this case testified that Sands told him he had no license to carry the gun.