**UNITED STATES of America,**
**Appellee,**

v.

**William Sherman TERRELL, et al.,**
**Appellants.**

**Nos. 463, 473 and 533, Dockets 72–1710, 72–2217 and 72–2329.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1972.

Decided Feb. 22, 1973.

Nancy Rosner, New York City (Edmund A. Rosner, New York City, of counsel), for appellants Terrell and McDonald.

Mitchel B. Craner, New York City (Guazzo, Silagi & Craner, New York City, on the brief), for appellant Hilliard.

Alan Scribner, New York City (Ivan S. Fisher, New York City, on the brief), for appellant Green.

Barbara Rowan, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

All four appellants appeal from convictions of violating the federal narcotics laws, 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A), and conspiracy, based on the distribution and possession with intent to distribute of ⅛ of a kilogram of heroin, and resulting in substantial sentences.[1] Appellant Terrell's

---

1. Terrell, 10 years' imprisonment followed by a 3-year special parole term; McDonald, 3 years' imprisonment followed by a 3-year special parole term; Green and Hilliard, 5 years' imprisonment followed by a 3-year special parole term.

only point on appeal relates to limitation of his attorney's summation. Appellants Green, Hilliard and McDonald all question the sufficiency of the evidence to convict them of aiding and abetting, as well as the adequacy of Judge Metzner's charge on the same issue. A recital of the facts is necessary to place appellants' contentions in context.

Two undercover New York City detectives, Bernhardt and Gadson, assigned to the "Joint Task Force," checked into Room 212 of the west side midtown Howard Johnson's Motor Lodge on October 8, 1971, for the purpose of keeping an appointment prearranged by an informant with appellant Terrell. After 11:00 p. m. Terrell and appellant Green came up to the room where Terrell and Detective Bernhardt discussed a narcotics sale from the former to the latter, the discussion involving quantity (⅛ of a kilogram), price ($4,700), and quality ("an eight cut," i. e., the narcotics could be diluted eight times). Green listened but did not himself speak. During the discussion the door to the adjoining room, where surveillance officers were stationed, opened and a detective was seen standing there, gun in hand. Detive Gadson yelled, "Run, . . . . . . . . . . . ., run," and Bernhardt, Green, Terrell and he ran out of the room and down the stairway. Subsequently they met at the corner of 8th Avenue and 51st Street and agreed to meet again at the International Bar on 49th Street. Terrell and Green then entered a brown Cadillac driven by another.

Shortly after midnight the same night, the two detectives went to the International Bar to keep their appointment but neither Terrell nor Green appeared. Following a call to the informant, the detectives taxied to 148th Street and Broadway where at 1:00 a. m. they met Green waiting in front of the Oasis Bar. Green and the detectives entered the previously mentioned Cadillac where they discussed the hotel incident; the detectives passed it off as involving a house detective who had seen Terrell and Green enter the hotel and knew them not to be guests.

Green then took the detectives to 150th Street, where Terrell was with appellant Hilliard. Detective Bernhardt got out of the Cadillac while Green drove Detective Gadson around. Terrell and Bernhardt reaffirmed the terms of the heroin sale in Hilliard's presence and also discussed the hotel incident. Within a few moments, Gadson and Green returned in the Cadillac. Gadson got out of the automobile and Terrell entered the front seat. Terrell and Green drove away, while Hilliard, Gadson and Bernhardt went to a nearby bar and had some drinks. In the bar, Bernhardt asked where Terrell or Hilliard could be reached in the future. Hilliard wrote a telephone number and the name "Stanley" on a slip of paper and gave it to Bernhardt. The three then crossed the street and entered another bar.

Shortly thereafter, Terrell and Green returned in the Cadillac. An Oldsmobile Toronado driven by appellant McDonald —introduced as "Ollie"—pulled up behind the Cadillac. At Terrell's behest Bernhardt climbed in the front seat of the Oldsmobile. Terrell then entered the rear seat, and when Detective Gadson started to enter Hilliard pulled him back and told him to wait. At some point in time Gadson handed the purchase money—$5,000—to Bernhardt.

McDonald, Bernhardt and Terrell then drove off in the Toronado and at a stop light Terrell gave the detective the heroin in the inevitable brown paper bag, and took the money. At a gas stop they discussed other heroin and cocaine sales and meeting three days later in Atlanta, Bernhardt's supposed home town, to discuss more business. When Terrell told him to ask for "Terrell" at an Atlanta motor lodge, appellant McDonald interrupted and said, "No, ask for McDonald." McDonald then drove the automobile back to 150th Street. Bernhardt got out of the Oldsmobile and left the area with Gadson. Terrell got out of the Oldsmobile and entered the Cadil-

lac with Green and Hilliard. Both cars drove away.

Subsequently Bernhardt had some telephone conversations with Hilliard at the phone number the latter had given Gadson and complained about a shortage in the delivered bag of heroin. Later Gadson called Hilliard who said to call later "and he would be ready to take care of business." In the later call Hilliard told Gadson "he had not been in touch with his man, but he would be able to handle the package himself."

The above recital of the facts shows that Hilliard's and Green's arguments as to sufficiency are without merit. Green accompanied Terrell to the Howard Johnson Motor Lodge and then, at the very latest, became aware that a narcotics sale was being arranged. He made contact with Gadson and Bernhardt at 148th Street and drove them to 150th Street to meet Terrell. He also drove Terrell away from and back to 150th Street, presumably to pick up the narcotics. He and Hilliard acted more or less as body guards, seeing to it that Terrell was never alone with both the detectives. Hilliard participated in the transactional mechanics that seem so often the concomitant of a narcotics sale: he waited while the man who was to make delivery went to get the drugs; he assisted in the changes of location which one can infer had the purpose of avoiding possible surveillance; he helped protect the man with the paper bag (Terrell) by keeping Gadson out of the Toronado so that Terrell could not be readily relieved of the "goods" without the necessary cash payment. In addition, Hilliard made himself the contact for future sales by giving Bernhardt his phone number and, it could be inferred, offered by telephone either to sell or to make up the deficiency in the original sale and to make further sales himself. There was thus ample evidence from which the jury could conclude Green and Hilliard were active participants in Terrell's narcotics operation.

The question of the sufficiency of the evidence against appellant McDonald is, however, on a different footing. She was present at the time of the transfer and by ready inference (since Bernhardt was in the front seat with his back to the window) knew that it was taking place. "[K]nowledge that a crime is being committed, even when coupled with presence at the scene," United States v. Garguilo, 310 F.2d 249, 253 (2d Cir. 1962), without more, however, is generally insufficient to prove aiding and abetting. *See also* United States v. Fantuzzi, 463 F.2d 683, 690 (2d Cir. 1972); United States v. Cianchetti, 315 F.2d 584, 588 (2d Cir. 1963) (co-conspirator must make an "affirmative attempt" to further the purposes of the conspiracy); United States v. Euphemia, 261 F.2d 441, 442 (2d Cir. 1958). *Cf.* United States v. DiRe, 159 F.2d 818, 820 (2d Cir. 1947), aff'd, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (presence of third person with parties to a conspiracy not sufficient grounds to support a warrantless arrest). But in addition to being present at the scene, McDonald operated the Toronado, thereby enabling the sale to be effectuated in the relative concealment of a moving automobile in the early morning hours. Providing this safe haven was sufficient to establish her active participation in the narcotics operation when coupled with guilty knowledge and presence at the scene. *Cf.* Nye & Nissen Corp. v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949), *quoting in part* United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.) ("In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed' "). *See also* Simon v. United States, 78 F.2d 454, 455–456 (6th Cir. 1935), cited with approval in United States v. Garguilo, *supra,* 310 F.2d at 253. The driving of

the automobile was in this instance a transactional element of the crime.

It is true that United States v. Steward, 451 F.2d 1203, 1206–1207 (2d Cir. 1971), held that evidence that an armed chauffeur of a car which carried a drug seller and his wares to a motel where the sale took place was not sufficient to convict the chauffeur of aiding and abetting the sale because there was no showing of the chauffeur's actual or constructive possession of the drugs. But the court there was careful to distinguish, 451 F.2d at 1207, cases where the defendant had either exclusive, Arellanes v. United States, 302 F.2d 603, 607 (9th Cir.), cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962), or joint, Eason v. United States, 281 F.2d 818, 820–821 (9th Cir. 1960), control over a vehicle in which secreted drugs were found, as well as cases where delivery of the narcotics was made in an automobile over which the defendant had some control or in which he was seen with the principal seller. Mack v. United States, 326 F.2d 481 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964). Here unlike the chauffeur in *Steward* but like the appellant in *Mack*, McDonald "was in attendance at the closing of the venture's negotiations in [her] automobile" and McDonald's "providing and operating the means of transportation" in which the sale took place "constituted an essential contribution to the commission of the crime." 326 F.2d at 486. Moreover, while unlike *Mack* there was no evidence McDonald shared in the proceeds of the venture, her reference to the Atlanta cocaine transaction under discussion by Terrell and Bernhardt is further evidence of her participation in Terrell's narcotics operation. No such additional indicia of participation in the narcotics sale was adduced against the chauffeur in *Steward*. While the evidence against McDonald was not overwhelming, it was not inadequate as a matter of law.

 All three appellants—Green, Hilliard and McDonald—argue that because the evidence on aiding and abetting was close the trial court should have given a *Garguilo* charge—that is, one telling the jury specifically that mere presence and guilty knowledge were not enough unless they were convinced that the individual defendant was a participant and not a mere spectator. The charge actually given here read in pertinent part as follows:

In order for a defendant to aid or abet another to commit a crime it is necessary that he wilfully associate himself in some way with the criminal venture, that he wilfully participate in it as something that he wishes to bring about, that he wilfully seek by some action of his to make it succeed.

This, the usual aiding and abetting charge, we believe was wholly adequate for appellants Green and Hilliard, against whom the evidence was overwhelming and whose counsel did not object to it in any event.[2] As to appellant McDonald, however, for the very reasons stated in *Garguilo*, 310 F.2d at 254, we think she was entitled to the charge requested by her counsel framed in *Garguilo* terms. Her conviction must therefore be reversed and remanded for a new trial.

 Appellant Terrell's objections to the limitations on his argument in summation are two, equally without merit. The first challenges the trial judge's limitation on argument attacking the credibility of a Government witness, Jackson, whose testimony relating to identification of Terrell's codefendant Johnson based on a tape recording of the conversation which set up the initial Bernhardt-Terrell meeting had been stricken when the court declared the

2. While the failure to give a *Garguilo* charge as to appellants Green and Hilliard does not rise to the level of plain error, *see* Fed.R.Crim.P. 52(b), the adoption of the *Garguilo* charge in future cases would have the benefit of avoiding this contention on appeal.

tape inaudible. But argument based on matter stricken from the record is not proper. United States v. Guajardo-Melendez, 401 F.2d 35, 39–40 (7th Cir. 1968); United States v. Spangelet, 258 F.2d 338, 342 (2d Cir. 1958). Since the tape recording itself, as well as Jackson's identification testimony, was stricken by the trial court the jury was in no position to evaluate arguments about Jackson's credibility based on them.

 The second limitation on argument occurred when Terrell's counsel suggested that Detective Bernhardt's original notes had been destroyed "because the notes might have embarrassed him or put the lie to him or have been inconsistent with his in-court testimony." This court has several times held in varying contexts that the Jencks Act, 18 U.S.C. § 3500, imposes no duty on the part of law enforcement officers to retain rough notes when their contents are incorporated into official records and they destroy the notes in good faith. E. g., United States v. Covello, 410 F.2d 536, 545 (2d Cir. 1968), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969) (good faith destruction does not require new trial); United States v. Jones, 360 F.2d 92, 95 (2d Cir. 1966), cert. denied, 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967) (good faith destruction does not require striking agent's testimony). Here there was no suggestion or showing as in United States v. Lonardo, 350 F.2d 523 (6th Cir. 1965), that the notes were deliberately destroyed on the eve of trial and were substantially different in content from the formal report.[3] The court below did not strike Terrell's argument when initially made but rather instructed the jury in accordance with the Second Circuit cases. When the argument was made the second time that the destruction was deliberate "[b]ecause he didn't want the notes available to us," it was properly struck in view of the fact that there was no evidence it was done for that purpose. Argument based upon the destruction of notes without any showing of the circumstances of the destruction may be made, but must be limited to suggestions as to what they might have shown or how the defense (or jury) has been impeded. In the absence of evidence, however, a defendant may not argue that the destruction was in bad faith or deliberate.

Judgment affirmed as to appellants Terrell, Green, Hilliard; reversed and remanded for a new trial as to appellant McDonald.