UNITED STATES of America, Appellee,

v.

Albert ANZALONE and Anthony Vivelo, Appellants.

Nos. 650, 780, Dockets 76–1458, 76–1461.

United States Court of Appeals, Second Circuit.

Argued Feb. 7, 1977.

Decided May 6, 1977.

Opinion on Rehearing Aug. 8, 1977.
See 560 F.2d 492.

Harvey L. Greenberg, New York City (Michael S. Washor, Brooklyn, N. Y., of counsel), for appellant Anzalone.

Michael P. Direnzo, New York City, for appellant Vivelo.

Ronald E. De Petris, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N: Y. (David G. Trager, U. S. Atty., and Bernard J. Fried, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before FEINBERG, GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

These convictions arose from a series of incidents of vandalism and arson directed against a black family that intended to move into a house, 351 Milton Avenue, Staten Island, on the block on which the appellants reside. The home of the new black neighbors was subjected to hostile acts ranging from shooting out the front windows and splashing paint on the front door to an attempt to burn it down. A Richmond County grand jury was convened to investigate the arson. Appellant Anzalone testified before that grand jury under a grant of transactional immunity against state prosecution. The state grand jury did not succeed in finding the perpetrators. The federal government then took a hand and a federal grand jury ultimately indicted the two appellants, Albert Anzalone and Anthony Vivelo, as well as two others, for violation of the civil rights of the black family and for making false declarations before the federal grand jury.

Both appellants were convicted by a jury of a violation of 42 U.S.C. § 3631 (Fair Housing Law) which prohibits intimidating persons from occupying a dwelling because of their race or color. Vivelo was also convicted of a violation of 18 U.S.C. § 241— the civil rights conspiracy statute. In addition, both appellants were convicted of making false declarations before a grand jury in violation of 18 U.S.C. § 1623. Judge Neaher sentenced Anzalone to imprisonment for one year on the substantive civil rights count and for one year on the false declaration count on which he was convicted, the terms to run concurrently. Vivelo was sentenced to eighteen months' imprisonment on the conspiracy count, imprisonment of one year on the civil rights substantive count, and one year on the false

declaration count on which he was convicted, the terms to run concurrently.

There is no claim that there was insufficient evidence to prove their guilt beyond a reasonable doubt, nor is any claim of error asserted with respect to the court's charge.

## I.

Both appellants testified under a grant of use immunity pursuant to 18 U.S.C. § 6002 before the very federal grand jury which indicted them. The claim now is that it was a violation of *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), for the *same* federal grand jury which heard their immunized testimony to indict them. We so held in *United States v. Hinton,* 543 F.2d 1002 (2d Cir. 1976), with respect to a substantive offense which was not perjury. Appellants argue that the *Hinton* rule, which was announced after their indictment, is retroactive and that it applies not only to require the dismissal of the substantive counts but also of the perjury and false declaration counts.

■ We turn first to the federal grand jury use immunity point. When an indictment is the product of the immunized testimony it must be dismissed so far as substantive offenses are concerned. *Kastigar, supra.* And we have recently held that "as a matter of fundamental fairness, a Government practice of using the same grand jury that heard the immunized testimony of a witness to indict him after he testifies, charging him with criminal participation in the matters being studied by the grand jury, cannot be countenanced." *United States v. Hinton,* 543 F.2d 1002, 1010 (2 Cir. 1976). In that case we reversed and ordered the dismissal of the indictment. The *Hinton* case involved a substantive count as noted.

■ Since we there discussed the problem of using the "same grand jury" in terms of "fundamental fairness" and since the pervasive vice is that the same grand jury could not help but "use" the immunized testimony in reaching its result, we

are not prepared to say that the decision was only prospective in operation. The essential unfairness of "using" that which may not be "used" predated the actual exercise of our supervisory power, and trenches upon the constitutionally impermissible as defined in *Kastigar, see* 406 U.S. at 453, 92 S.Ct. 1653. It is, accordingly, the rule of the circuit that when, as here, the *same* grand jury that heard the immunized testimony indicts the defendants, the conviction must be reversed and the indictment dismissed, with respect to substantive offenses. We must therefore reluctantly reverse the convictions of both appellants on all but the false declaration counts.

■ Turning to the false declaration counts, the rule is, as 18 U.S.C. § 6002 itself provides, that false testimony given under use immunity in the grand jury may nevertheless become the predicate for a perjury or false declaration charge. *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); *see United States v. Housand,* 550 F.2d 818 (2d Cir. 1977). *Cf. United States v. Tramunti,* 500 F.2d 1334 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

Appellants counter that when they were indicted for making false statements before a grand jury, the statements themselves became the issue of fact to be ultimately determined at a trial. The implication is that they cannot be "false" until they are found to be so. In support of their view, they cite only *United States v. Kurzer,* 534 F.2d 511 (2d Cir. 1976). But *Kurzer* says no such thing. There the issue was whether Kurzer's immunized testimony had motivated the principal prosecution witness to testify, *because* of what Kurzer had told the grand jury under the immunity grant. The Government argued that, in any event, Kurzer had forfeited all of his immunity by testifying falsely. Judge Feinberg rejected this contention, noting that "the ordinary remedy for the Government when an immunized witness lies . . . is a prosecution for perjury . . . rather than

. . . use of the information truthfully given by the immunized witness to prosecute him for *other* offenses." 534 F.2d at 518 (emphasis added). That is precisely what was done here when the appellants were indicted for making false declarations before a grand jury in violation of 18 U.S.C. § 1623.

Appellants' argument is circular and self-defeating. Their argument simply amounts to this. A witness can never be *indicted* for perjury unless and until a petit jury has found him guilty of perjury. This would vitiate the *Glickstein* rule. *See* 18 U.S.C. § 6002. This indictment clearly set forth as a predicate for the indictment the alleged perjurious answers given. The charge was that the defendant "did knowingly make" the false material declarations which were set out in the indictment with particularity.

■ We hold that the grant of immunity did not protect the grantee against the false declarations he knowingly made under the federal immunity grant, and that the proper body to determine whether the declarations made were, in fact, false was the trial jury. By its verdict of guilty, it established that the declarations were false and, hence, outside the immunity conferred.

## II.

The second claim, made by appellant Anzalone alone, relates to the state grand jury and the transactional immunity there conferred. He contends that the indictment should be dismissed because it was "tainted" by the Government's use of his immunized testimony before the state grand jury.

■ Anzalone testified before the Richmond County grand jury investigating the fire at 351 Milton Avenue under grant of transactional immunity against state prosecution. He contends that the indictment should be dismissed because of taint arising from the federal government's alleged *use* of that testimony in this prosecution. *Murphy v. Waterfront Commission*, 378 U.S. 52,

77–79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The "transactional" immunity granted by the state does not prevent federal prosecution for the same transaction. The rule is simply:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."

378 U.S. at 79 n. 18, 84 S.Ct. at 1609.[1]

■ With respect to the transactional immunity granted him by New York, Anzalone argues that the state grand jury minutes were turned over to the federal prosecutor and that the Government has failed to prove that it derived the evidence of his indictment from wholly independent sources as required by *Kastigar, supra.* Judge Neaher accordingly held a post-trial evidentiary hearing, after which he denied Anzalone's motion to dismiss the indictment which had been made before trial, based on alleged "taint." Anzalone contends that the proof was insufficient to sustain the Government's burden of showing that it obtained its evidence against appellants from a wholly independent source.

In view of our holding that the substantive counts must be dismissed in any event, because the indictment was tainted, we need not consider this contention with regard to Anzalone's conviction on the substantive civil rights count.

With respect to the false declaration counts, it is possible to conceive a situation in which immunized testimony might be improperly used to obtain a perjury conviction. A situation might conceivably arise in which the defendant had told the truth in the state grand jury and lied in the federal grand jury. In such a case the question might be posed whether knowledge of the truth by the federal prosecutor gained from the immunized testimony had been used to

---

1. *See also Kastigar, supra*, 406 U.S. at 457, 92 S.Ct. 1653, where the Court drew from *Murphy* the conclusion that use immunity, without the grant of transactional immunity, satisfied the constitutional requirements of the Fifth Amendment.

support a federal false declarations indictment. *Cf. Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914).

However, we have no such question here. Anzalone was indicted on two false declaration counts, Counts Four and Nine. The false declarations charged in Count Four, on which Anzalone was convicted, related to appellant's denials that he had ever been involved in acts of vandalism against the premises at 351 Milton Avenue; and specifically, that he had ever shot a gun or seen anyone shoot a gun at the front windows of that house, or known the identity of anyone who inflicted any kind of damage on those premises. Significantly, he was not asked about shooting a gun or anything related thereto in the state grand jury and no leads could possibly have been developed from that testimony which consisted of a wholesale denial of complicity.

The false declaration charge in Count Nine was limited to two questions concerning the night of the fire at 351 Milton Avenue as follows:

"Q. After he left your house, called his wife, had a cup of coffee which you say is about one o'clock, after that time prior to the fire which took place at two o'clock or shortly thereafter, in that intervening time did Mr. Vivelo come over to your house again?

"A. No.

"Q. You are sure about that?

"A. Positive."

Anzalone was acquitted on Count Nine. No evidence was derived, either directly or derivatively, from the state grand jury testimony. Judge Neaher, nevertheless, properly held an evidentiary hearing at which he recognized that the Government has the burden of showing that it derived its evidence from wholly independent sources. We have reviewed the testimony and affirm the District Court's finding that the Government has sustained that burden.

### III.

Finally, both appellants contend that they are entitled to a new trial because FBI Agent Savadel, who had interviewed Gerard Maddalone, a principal prosecution witness, testified that he had destroyed his rough notes of the interview after dictating and proof-reading a report thereof; and that this was the practice of the FBI.

We said in *United States v. Terrell*, 474 F.2d 872, 877 (2d Cir. 1973):

"This court has several times held in varying contexts that the Jencks Act, 18 U.S.C. § 3500, imposes no duty on the part of law enforcement officers to retain rough notes when their contents are incorporated into official records and they destroy the notes in good faith. *E. g.*, *United States v. Covello*, 410 F.2d 536, 545 (2d Cir. 1968), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969) (good faith destruction does not require new trial); *United States v. Jones*, 360 F.2d 92, 95 (2d Cir. 1966), cert. denied, 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967) (good faith destruction does not require striking agent's testimony). Here there was no suggestion or showing as in *United States v. Lonardo*, 350 F.2d 523 (6th Cir. 1965), that the notes were deliberately destroyed on the eve of trial and were substantially different in content from the formal report."

We adhere to the view expressed in *Terrell*. There was no showing that the notes were destroyed with intent to keep them from the defendants. Nor do we think they would be likely *Brady* material, as was intimated in *United States v. Harrison*, 173 U.S.App.D.C. 260, 524 F.2d 421, 429 (1975), unless there is more of a showing that, notwithstanding the existence of the typewritten report which was furnished to defendants, the handwritten notes would have been helpful to the defense. To protect itself against the day when the witness may claim that the typed summary (which is discoverable, *see United States v. Johnson*, 525 F.2d 999, 1003, 1004 (2d Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976)), was contrary to what he said, we think that the FBI would be well-advised, however, to retain the handwritten notes until the prosecution is terminated.

**322**

The conviction of Anzalone on Count Two is reversed and the indictment on that count is ordered dismissed; his conviction on Count Four is affirmed. The conviction of Vivelo on Counts One and Two is reversed, and the indictment on these counts is ordered dismissed; his conviction on Count Five is affirmed.