UNITED STATES, Appellee

v.

ROLAND J. JACOBS, Private First Class, U. S. Army, Appellant

1 USCMA 209, 2 CMR 115

No. 152

Decided March 13, 1952

1ST LT. Thomas E. Cole, USA, for Appellant.

MAJ. Augustus A. Marchetti, USA, and 1ST LT. Eugene L. Grimm, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition granted for the purpose of considering the question of sufficiency of the evidence. Petitioner, together with three other soldiers, was tried by general court-martial in Yokohama, Japan, under charges alleging certain joint offenses comprising larceny, robbery, and assaults. The trial having commenced on May 28, 1951, its procedure was governed by the Articles of War (10 U.S.C. §§ 1471–1593) and the Manual for Courts-Martial, U. S. Army, 1949. All four accused persons were found guilty of robbery only, and petitioner was sentenced to receive a dishonorable discharge, to forfeit pay and allowances, and to be confined at hard labor for five years. Army reviewing authorities have upheld the findings and sentences in all cases, including that of this petitioner.

The facts may be recounted briefly. Petitioner and three other soldiers entered a private home in Tokyo on the night of January 20, 1951, knocked out a partition, and assaulted the owner and occupant, one Hatsuo Takata. At the time of the entry Hatsuo had in his hand a purse containing somewhat more than nine hundred yen. His brother, Jinka, came to his assistance, was struck by one of the soldiers, and shortly thereafter left the house. Jinka stated that during the period of his presence, petitioner and another stood by while two other soldiers carried on the attack. However, Hatsuo testified explicity that, although Private Greggs, another accused, led the assault, the three other soldiers also beat him. After the four soldiers had gone, Hatsuo observed that his purse was no longer in his possession. The victim and Jinka thereupon pursued the assailants, obtained assistance from civilian and military police, and ultimately apprehended all four offenders. The missing property was found in the possession of Private Greggs.

Although the evidence did not establish that petitioner himself committed the robbery, it amply supports a finding that he did participate in the assault. If guilty at all, therefore, he must be so on the theory that he aided and abetted in the commission of the crime. The Manual for Courts-Martial, U. S. Army, 1949, paragraph 27, provides that "Anyone who commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal; . . ." This constitutes a restatement of the applicable federal law of the subject. 18 USCA § 2. The problem before us is the degree of complicity required to constitute as an aider or abettor one who did not actually commit the crime itself.

Inactive presence during the commission of an offense is clearly an insufficient link to guilt. The aider and abettor must share the criminal intent or purpose of the active perpetrator of the crime, and must by his presence aid, encourage, or incite the major actor to commit it. Morei v. United States, 127 F. 2d 827, 831, (C.A. 6th Cir.). See Manual for Courts-Martial, United States, 1951, paragraph 156. The proof must show that the aider or abettor did in some sort associate himself with the venture, that he participated in it as in something he wished to bring about, that he sought by his action to make it successful. Learned Hand, J., in United States v. Peoni, 100 F. 2d 401, 402, (C.A. 2nd Cir.). The standard of relationship to the offense by which conviction as an aider and abettor must be measured, therefore, lies somewhat between proof of participation as a paramount agent, on the one hand, and speculative inference based on mere presence at the scene of the crime, on the other, and is made definite by the requirement of evidence of specific intent.

These rules are well founded on considerations of public policy. To relieve one who shares a common purpose to commit a felony, and actually assists in its perpetration, from the penalty exacted by society therefor, merely because his assigned role in the total scheme does not encompass action as to all elements of the offense, is contrary to both reason and justice. It was for this reason that the common-law rule distinguishing between principals of the first and second degrees was abolished. Wharton, Criminal Law, § 245. However, recognition of the desirability of the modern rule does not lessen our responsibility for insuring that the standard of proof is not minimized to the point of permitting conviction upon a theory of guilt by association—a principle alien to American standards of justice. See Mr. Justice Murphy, dissenting, in Nye and Nissen v. United States, 336 U. S. 613, 630, 93 L ed 919, 930, 69 S. Ct. 766.

Disposition of the case before us requires only that we fit its facts into the framework of legal principles discussed above. The evidence before the court-martial renders improbable an inference that petitioner personally committed the robbery alleged, although it amply supports a finding that he engaged in the attack on Hatsuo Takata. This assault provides the necessary act of assistance, and accordingly we have before us much more than mere presence at the scene of the crime. The element of intent remains. Circumstantial evidence may be relied on to establish that one who committed an act in furtherance of a crime, in fact shared a common purpose to accomplish the resulting felony. Nye and Nissen v. United States, supra. A state of mind is, of course, difficult to prove precisely. However, surrounding circumstances may, in themselves, make clear the intent necessary to constitute one an aider and abettor. McCoy v. United States, 169 F. 2d 776, 783, (C.A. 9th Cir.). Breaking and entering a dwelling house in the nighttime and assaulting its occupants is indeed inconsistent with innocent intent. Nor is it logical to assume, in the absence of clear evidence to this effect, that these acts were prompted by a motive other than that suggested by the prosecution—say, for example, a desire merely to batter the house's Japanese occupants. There is no evidence

**211**

that the four soldiers were intoxicated. We think the court-martial could have inferred reasonably and logically from the circumstances that petitioner and his associates intended to accomplish exactly what did result in fact from their act of housebreaking—that is, a theft of money from the place's occupants.

We have examined painstakingly the record of trial in this case. We have also given thorough consideration to the excellently presented arguments of appellate defense counsel and to the cases cited in support thereof. Each of the latter, we believe, although reaching a different result, turns on its own peculiar facts. We do not understand that there is disagreement as to the applicable legal principles. We have applied these principles to the facts of the petitioner's case and we find adequate evidence—the "substantial evidence" regarded by us as necessary—to support the court-martial's conclusion that petitioner intended to and did in fact participate in the felony here charged. See United States v. McCrary, (No. 4), 1 USCMA 1, 1 CMR 1, decided November 8, 1951; United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952; United States v. Shull, (No. 45), 1 USCMA 177, 2 CMR 83, decided February 18, 1952. In the first of these cited cases the following language was used, which is here repeated with approval:

". . . if there is any substantial evidence in the record to support a conviction an appellate court . . . will not set aside the verdict. . . . In stating this rule we have not overlooked the converse principle that where there is no substantial evidence in the record to sustain the conviction the appellate court will set it aside. . . . [However], this [second] rule neither precludes those tribunals from drawing reasonable inferences from the evidence presented nor does it permit this court to set aside a conviction because we might have inferred differently."

It follows from what has been said that the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.