UNITED STATES, Appellee

v

ROBERT G. ELLIS, Private, U. S. Army, Appellant

No. 26,886

November 23, 1973

*Major Franklin D. Arness* argued the cause for Appellant, Accused. With him on the brief was *Colonel Arnold I. Melnick.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Major Thomas P. Burns, III, Captain James F. Motley, Captain M. Douglas Deitchler,* and *Captain Stan L. Spangler.*

## OPINION OF THE COURT

DUNCAN, Judge:

The appellant was convicted, upon his plea of guilty, of two specifications alleging a violation of 21 USC § 841(a)(1) in that he distributed and possessed with intent to distribute, a controlled substance, to wit: LSD. We granted review to determine whether the plea was improvidently made.

21 USC § 841(a)(1) provides in part:

[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

A stipulation of fact, Prosecution Exhibit I, was entered in evidence. See Appendix. Essentially, according to the stipulation, Ellis admitted that he knowingly assisted Private First Class Wood in the sale of 13 grams of LSD, a substance which he knew to be controlled, to Private First Class Consentino and Staff Sergeant Watson by (a) putting the latter two men in contact with Wood; and (b) negotiating the price per tablet to be paid by Consentino and Watson. When discussing the matter of cost, Ellis displayed a small tinfoil packet and stated to the purchasers that the drugs were of good quality, that he was going to take the one he had in his hand while on his plane trip home and would probably be high for the whole trip (specification 1). Upon being searched, after his arrest, the gram of LSD, which Ellis had previously displayed, was found in his possession. Ellis intended to distribute this gram by returning it to Wood, the rightful owner. This possession was totally independent of and unrelated to the prior sale (specification 2).

During the inquiry into the providence of the plea of guilty, the appellant testified in detail as to what took place. His testimony, in all pertinent matters, accorded with the stipulation of fact. When the military judge inquired of Ellis what was his connection with the sale as far as Wood was concerned, Ellis replied:

ACC: I wanted the sale to go through. I wanted Wood to sell it.

MJ: Why?

ACC: Your honor, I knew he was having problems at home and I knew he was in a fix, and that's why I had sent Consentino to ask Wood and to help Wood sell the drugs to Consentino because I knew he was in a fix, and he wanted to get rid of his controlled substance.

Shortly thereafter, the military judge expressed doubt over the question of whether he should accept the plea. "It seems to me you have got to have some kind of a mens rea to be guilty of a criminal offense, and I'm not sure he has." Following consultation with counsel and further inquiry of the appellant, the military judge accepted the plea of guilty to both specifications and the Charge. Appellant's testimony under oath, during the sentencing portion of the trial, was in accord with the stipulation and his earlier recitation of the facts.

Appellate defense counsel contend that the plea was improvidently made on the ground that Ellis lacked the necessary criminal intent to commit the charged offenses. Counsel also allege that the appellant was entrapped into taking part in the sale by agents of the Government. Counsel for the Government view the testimony and the stipulation of fact as being entirely consistent with each other and as evidence of the appellant's activities as a principal in the sale. He wanted the sale to be successful in order to help his friend and he took a number of actions designed to effectuate the sale. The appellant admitted that he intended, at a later time, to give to Wood the LSD found in his possession after his arrest.

We believe the Government correctly characterizes the appellant's actions to be such as to constitute him a principal in the sale, by Wood, of the LSD. Trial defense counsel so viewed his participation—"As to the first specification, your honor, the defense will concur with the prosecution in the belief that the accused was a principal in this case."

Article 77, Uniform Code of Military Justice, 10 USC § 877, defines a principal as one who "aids" or "abets" another in the commission of an offense.

Paragraph 156, Manual for Courts-Martial, United States, 1969 (Rev.), provides:

> To constitute one an aider and abettor . . . mere presence at the scene is not enough . . . there must be an intent to aid or encourage the persons who commit the crime. The aider and abettor must share the criminal intent or purpose of the perpetrator.

In United States v Jacobs, 1 USCMA 209, 211, 2 CMR 115, 117 (1952), we said:

> The proof must show that the aider and abettor did in some sort associate himself with the venture, that he participated in it as in something he wished to bring about, that he sought by his action to make it successful. Learned Hand, J., in United States v Peoni, 100 F2d 401, 402 (CA 2nd Cir).

See also United States v Patterson, 7 USCMA 9, 12, 21 CMR 135, 138 (1956).

In military law, the basis for holding a plea improvident is Article 45, UCMJ, 10 USC § 845. See paragraph 70, MCM; United States v Timmins, 21 USCMA 475, 478, 45 CMR 249, 252 (1972), and cases cited therein. We find nothing in the appellant's testimony or in the stipulation of fact which would warrant a finding of improvidence. He knew that Wood intended to sell a controlled substance; that such a sale would be wrongful and unlawful; and, as he acknowledged at trial, "I wanted the sale to go through." United States v Jacobs, supra. His active participation prior to and during the sale leave no doubt that he *shared the criminal intent* of the seller.

■ The defense of entrapment must similarly be rejected. Although Consentino and the appellant were not previously acquainted, the appellant was not at all hesitant to discuss the matter when Consentino approached him and asked about buying drugs. He told Consentino that Wood had drugs to sell but that he was not in his room at the time. When Consentino could not wait, the appellant agreed to tell Wood to be in the parking lot the next morning to make the sale. At no time did the appellant contend or deport himself as though he was acting solely as the agent of Consentino, United States v Fruscella,

21 USCMA 26, 27, 44 CMR 80, 81 (1971); rather, as he testified at trial, "I helped Wood sell drugs." There is simply no basis for believing that the appellant was entrapped into committing this offense by Government agents.

■ The question of the providence of the appellant's plea of guilty under specification 2, possession with intent to distribute one gram of LSD to Wood, need not detain us. As noted, the specification alleged a violation of 21 USC § 841(a)(1). In the definition of terms as used in 21 USC § 802, subsections (8) and (11), " 'distribute' means to deliver" and " 'deliver' or 'delivery' mean[s] the actual, constructive, or attempted transfer of a controlled substance, *whether or not there exists an agency relationship"* (emphasis added). *Cf.* United States v Fruscella, supra.

With regard to this one gram of LSD found in his possession at the time of the search, the appellant testified:

> The night before Wood had given it to someone else to take to see if it was good, and the guy didn't want to, so he gave it back to me to give it back to Wood, and I had forgot about the whole thing. . . .

> .   .   .   .   .

> It was in my possession and I was going to distribute it back to Wood, give it back to Wood.

> .   .   .   .   .

> I knew it was wrong even to hold it.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.

### Stipulation of Fact

It is hereby stipulated by and between the prosecution and the defense, with the express consent of the accused, that the following constitutes a true and accurate statement of fact:

On September 1972, contact was made between the accused and Private First Class Thomas F. Consentino. Private First Class Consentino indicated that he was interested in purchasing some drugs. Private Ellis told Private First Class Consentino that Private First Class

John R. Wood had some drugs that he wanted to sell. Upon questioning from PFC Consentino, the accused indicated that if PFC Consentino wanted a substantial quantity of the drugs that PFC Wood would probably sell the drugs to PFC Consentino for two dollars a tablet. Later that evening, the accused told PFC Wood that PFC Consentino wanted to purchase some drugs from him. Between 0530 and 0600 hours on 22 September 1972, the accused approached an automobile occupied by PFC Consentino and Staff Sergeant Albert E. Watson. When questioned as to why the sale price had increased from two dollars per tablet to three dollars per tablet the accused responded that the price had to be three dollars per tablet or that PFC Wood would lose money on the deal. At that time the accused held out what appeared to be a small tin foil packet and stated to PFC Consentino and Staff Sergeant Watson that the drugs were of very good quality and that he was going to take the one he had in his hand while on his plane trip home and would probably be high for the whole trip. At about this time PFC Wood approached the car and sold 13 grams of lysergic acid diethylamide, commonly called LSD, to Staff Sergeant Watson for the sum of $39.00. At the time of the sale, the automobile was parked in the parking lot in front of the accused's barracks at Company E, 4th Battalion, School Brigade, US Army Southeastern Signal School, Fort Gordon, Georgia. The sale made by PFC Wood was made wrongfully, knowingly and unlawfully and PFC Wood was fully aware of the nature of the substance sold and the fact that lysergic acid diethylamide is a controlled substance.

At the time the sale took place the accused knew that PFC Wood intended to sell a controlled substance. The accused knew that the sale would be wrongful and unlawful. The accused willfully, knowingly and deliberately engaged in negotiations with PFC Consentino on the evening of 21 September 1972 and made statements as to the price and quality of the drugs on the morning of the 22nd of September 1972 to aid PFC Wood in the sale of the drugs. The accused's statements to PFC Consentino and Staff Sergeant Watson on the morning of 22 September 1972, were made knowingly and deliberately and for the purpose of bringing the transaction between PFC Wood and PFC Consentino and Staff Sergeant Watson to a successful conclusion. At that time the accused knew that PFC Wood intended to distribute a controlled substance and it was the intention of the accused to assist PFC Wood in that wrongful and unlawful distribution through his actions and his words. Shortly after the sale took place, the accused was apprehended by Criminal Investigator Raymond Staples, Fort Gordon Field Office, 3d Region, USACIDC, Fort Gordon, Georgia, and was transported to the Provost Marshal's Office, Fort Gordon, Georgia. A search of the detention cell, a short time after the accused had been placed in that cell at the Provost Marshal's Office, Fort Gordon, Georgia, revealed 1 gram of lysergic acid diethylamide which had been in the possession of the accused. The possession by the accused was wrongful, knowing, and unlawful, and the accused was fully aware of the nature of the substance in his possession and that said substance was a controlled substance. The accused intended to distribute this 1 gram by returning it to its true owner PFC Wood. The possession of this 1 gram was totally independent of and unrelated to the prior sale to Staff Sergeant Watson.

> John W. Belk
>   Captain, JAGC
>   Defense Counsel
>
> Robert L. Brittigan
>   Captain, JAGC
>   Trial Counsel
>
> Robert G. Ellis
>   Private (E-2), US Army
>   Accused