UNITED STATES, Appellee,

v.

Michael D. BURROUGHS, Private First
Class U. S. Army, Appellant.

No. 39,669.
SPCM 14409.

U. S. Court of Military Appeals.

March 1, 1982.

For Appellant: *Major Charles A. Byler*
(argued); *Lieutenant Colonel John F. Lym-
burner, Major Robert D. Ganstine, Major
Alan W. Schon* (on brief); *Major Lawrence
D. Galehouse, Major Raymond C. Ruppert.*

For Appellee: *Major John T. Meixell* (ar-
gued); *Colonel R. R. Boller, Major Douglas
P. Franklin* (on brief); *Major Ted B. Borek,
Major John T. Edwards.*

## OPINION OF THE COURT

EVERETT, Chief Judge:

Appellant was tried at Fort Hood, Texas,
by a military judge sitting as a special
court-martial. Contrary to his pleas, he
was found guilty of the single charge of
wrongful sale of marihuana, in violation of
Article 134, Uniform Code of Military Jus-
tice, 10 U.S.C. § 934; he was sentenced to a
bad-conduct discharge, confinement at hard
labor and partial forfeitures for 1 month,
and reduction to the grade of E–1. After
the convening authority approved the find-
ings and sentence, the United States Army
Court of Military Review affirmed in a
memorandum opinion. We granted appel-
lant's petition for review on these two is-
sues (10 M.J. 112):

**I**

WHETHER THE EVIDENCE AD-
DUCED AT TRIAL SUPPORTS A
FINDING THAT APPELLANT BUR-
ROUGHS WRONGFULLY SOLD MARI-
HUANA, INASMUCH AS HE WAS
MERELY PRESENT AT THE SCENE
OF THE CRIME AND MADE CHANGE
FOR THE TWENTY DOLLAR BILL
WHICH THE GOVERNMENT AGENTS
USED TO BUY THE MARIHUANA
FROM PV1 WHITE.

**II**

WHETHER THE STAFF JUDGE AD-
VOCATE'S POST–TRIAL REVIEW IS
INADEQUATE, BECAUSE IT DOES
NOT ADDRESS THE COMPLEX LAW
OF AIDING AND ABETTING UNDER
WHICH APPELLANT WAS CONVICT-
ED.

Special Agent Neil Krans of the Army Criminal Investigation Division (CID) testified that on July 5, 1979, a confidential informant reported to him that marihuana might be purchased from someone at Fort Hood, Texas. As a result of this report, Krans arranged for a military policewoman, Private Debra Johnson, to accompany the informant into a barracks room where the marihuana was to be available. Private Johnson had been provided with a marked $20 bill; she and the informant were taken by Krans to the building where they intended to make a purchase. Shortly thereafter, Private Johnson delivered to the CID two canisters containing green vegetable matter which testing proved to be marihuana.

Private Johnson testified as a government witness that, after entering the building, she and the informant[1] had gone upstairs to a room where the informant asked, "Is Mike around?" Appellant—who was identified to them as "Mike"—was lying there in a bed; the informant had a conversation with him which Private Johnson could not hear. Then the informant began talking to Private Clifford White, who was also in the room. During this conversation, the informant requested White to sell some of his marihuana and White replied, "I'll sell you a canister for five." Private Johnson agreed to this offer and then asked, "You got change for a twenty?"; but neither White nor the informant had any change. Thereupon Mike was requested by the informant to make change but he said, "He didn't have it." The informant next went out into the hall, where three men were watching television, but he soon returned and reported, "We can't find change."

Since White had "another canister" of marihuana, Private Johnson asked if he wanted "to sell that one" as well. Thereupon, according to her testimony:

[H]e said, "No." I said, "Well, we kind of like having a party," and I said, "Would you like to sell it," and he said, "Okay, it will be for another five." So, I said, "Okay." But they still couldn't give us change. So then the informant said— asked Mike, was he sure he didn't have no change, he said "Well, all I have is a ten," so Mike gave me the ten and I gave him the twenty.

Until he got up to make change, appellant had been lying on his bed five or six feet from where White, Johnson, and the confidential informant had been talking. Private Johnson received $10 from appellant, but she did not remember what Private White received. However, she did recall "that Mike said, he would give him the $4 later."

The Government also offered evidence that, when appellant was asked by Special Agent Krans if he had sold any marihuana on July 5, 1979, he replied, according to Krans:

"No, the marihuana was sold by White— PFC White, that he did not have any

---

1. Private Johnson called him "the CID agent" during most of her testimony, but she did refer to him also as "the informant." Thereafter, she resumed referring to him as "the CID agent." However, Agent Krans testified that the informant accompanied Private Johnson into the room. To avoid the ambiguities in her testimony the person will be referred to as the informant, since the parties treated the person as such.

stash, therefore, he had told White to sell some of his." I also asked him if he accepted any money for this. He said, in as much as White did not have change for a twenty dollar bill, which was offered by Johnson, he took the $20 bill and made change for it.

■ The defense moved for a finding of not guilty on the grounds that this evidence offered by the Government was insufficient to establish that appellant had aided and abetted the sale of the marihuana by Private White. After this motion was denied,[2] the defense called as a witness Private White, who—shortly before the commencement of appellant's trial—had himself pleaded guilty to a charge of selling the marihuana to Private Johnson and had been sentenced to a bad-conduct discharge. White denied that appellant possessed any of the marihuana which he sold to Private Johnson and asserted that appellant's "only involvement ... was that he gave me change for a twenty." White received all the change from the $20 bill except for $4 which appellant kept, the transaction being described in this manner:

Q: Did you get all your change from this twenty?

A: All with the exception of $4.

Q: Why did he keep the $4?

A: Well, one reason, sir, is because he didn't have anything else in his billfold, that was the last of his money, and also I owed him $4 for lunch or something

like that, you know, we been buying stuff like that all the time. We pay each other back.

Q: You owed him exactly $4?

A: It could have been a little bit more or a little less.

According to White, he overheard appellant refuse to sell marihuana to Private Johnson and the confidential informant before his own negotiations for sale took place. Later, when White asked appellant to change the $20 bill, he

told him that I was—made a sale and everything and I needed change and that was about it, sir.

Appellant's response, according to White, was:

At first he said he didn't, but and then he remembered a $4 debt that I owed him, for like I said previously in my testimony, for lunch and stuff like that, that we had been paying each other back for, and he just gave me $16.

### Issue I

■ Article 77 of the Uniform Code, 10 U.S.C. § 877, imposes criminal liability as a principal on one "who ... aids, abets, counsels, commands, or procures... [the] commission" of an offense. We have pointed out:

The law of aider and abettor [3] is not a dragnet theory of complicity. Mere inac-

---

**2.** We need not consider whether the judge erred in denying this motion, for "if all the evidence in the record, whether adduced by the defense or the prosecution, or both, is sufficient to sustain a conviction, the conviction need not be set aside upon review merely because the court erred in denying the motion for a finding of not guilty at the time it was made." Para. 71a, Manual for Courts-Martial, United States, 1969 (Revised edition). Several courts of appeals consider all the evidence in the record in determining whether a motion for judgment of acquittal should have been granted under Fed. R.Crim.P. 29. *See, e.g., United States v. Cooper,* 596 F.2d 327 (8th Cir. 1979); *United States v. Wetzel,* 514 F.2d 175 (8th Cir. 1975); *cert. denied,* 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *United States v. Belgrave,* 484 F.2d 915 (3rd Cir. 1973); *United States v. Figueroa-Paz,* 468 F.2d 1055 (9th Cir. 1972); *but see United States v. Henderson,* 524 F.2d 489 (5th Cir. 1975); *United States v. Watkins,* 519 F.2d 294

(D.C.Cir.1975). Although *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), established that the Government will not be allowed a second chance to marshal sufficient evidence after it has failed at a defendant's first trial, we do not interpret this precedent to signify that paragraph 71a of the Manual violates double-jeopardy guarantees by permitting the trier of fact and the appellate court to consider not merely the government's evidence in the case in chief but also defense evidence and government rebuttal evidence.

**3.** Since Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877, abolished the common law distinctions between an accessory before the fact and an aider and abettor by making them all principals, it is appropriate to refer to the law of aider and abettor, which was recognized under the common law, as the law of principals under Article 77.

tive presence at the scene of the crime does not establish guilt. *United States v. Williams*, 341 U.S. 58 [71 S.Ct. 595], 95 L.Ed. 747. Neither does later approval of the act supply a ground for conviction. *True v. Commonwealth*, 90 Ky. 651, 14 S.W. 684; *Harper v. State*, 83 Miss. 402, 35 So. 572. The law requires concert of purpose or the aiding or encouraging of the perpetrator of the offense and a conscious sharing of his criminal intent. [Citations omitted].

*United States v. Jackson*, 6 U.S.C.M.A. 193, 201–02, 19 C.M.R. 319, 327–28 (1955). *Accord, United States v. Ford*, 12 U.S.C.M.A. 31, 30 C.M.R. 31 (1960); *United States v. McCarthy*, 11 U.S.C.M.A. 758, 29 C.M.R. 574 (1960); *United States v. Outlaw*, 2 M.J. 814 (A.C.M.R.1976), *pet. denied*, 5 M.J. 1104 (C.M.A.1976). In the case at bar, we conclude that the evidence—when viewed in the light "most favorable to the Government," *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942)—suffices to establish more than "[m]ere inactive presence at the scene of the crime."

Private Debra Johnson and the confidential informant talked first to appellant and then to Private White. According to appellant's oral statement to the CID agent—a statement which fits the sequence of events reflected in the other evidence—appellant "did not have any stash" so "he had told White to sell some of his." In addition to this encouragement of White, appellant later changed the $20 bill and applied $4 therefrom to an indebtedness owed him by White. At this time, he was well apprised of the purpose for which the change was desired, having been present in the room within easy hearing distance of the conversation between White, Johnson, and the confidential informant. Moreover, White had explained to appellant why he needed the change. Under some circumstances the making of change in conjunction with a sale of narcotics might be of such minimal importance to the success of the transaction that it would not suffice to establish liabili-

ty as a principal. However, in the case at bar, appellant was aware that the parties to the sale were having difficulty getting the funds needed to consummate the sale. Indeed, according to Private Johnson's testimony, the sale of one canister of marihuana, which was originally proposed, was expanded to include two canisters after there had been difficulty getting the proper change for a one-canister transaction.

Private Johnson and the confidential informant could not wait indefinitely for White to obtain change for the marked $20 bill, since Special Agent Krans had allowed them only a limited period of time to consummate the controlled-drug purchase. Thus, without appellant's cooperation, a sale might not have occurred at all. By working out an arrangement whereby the transaction could be accomplished without delivering to White the full $10 in cash, which he initially had demanded for the two canisters of marihuana, appellant openly associated himself with the sale. Moreover, he received the immediate benefit of exchanging his claim against White for a payment of $4.

We have examined the cases appellant has cited in his brief and supplemental citations of authority; however, they do not change our conclusion. *United States v. Jackson, supra*, announced the applicable principles for aiding and abetting and then determined that the evidence there was sufficient to establish aiding and abetting. *United States v. Jacobs*, 1 U.S.C.M.A. 209, 2 C.M.R. 115 (1952), recognized that "[m]ere . . . presence at the scene of the crime" (*United States v. Jackson, supra*) is insufficient for conviction as a principal. However, relying on circumstantial evidence "to establish that one who committed an act in furtherance of a crime, in fact shared a common purpose to accomplish the resulting felony," (*United States v. Jacobs, supra* at 211, 2 C.M.R. at 117), the Court concluded in *Jacobs* that the evidence was sufficient to establish the robbery of which the accused had been convicted by court-martial. These precedents are consistent with appellant's liability here.

In *United States v. Keenan*, 18 U.S.C. M.A. 108, 39 C.M.R. 108 (1969), the Board of Review reversed the court-martial's finding that the accused committed premeditated murder of a Vietnamese woman. His squad leader, Corporal Luczko, fired two shots at the victim, whereupon appellant asked if he should "finish ... off" the woman. Id. at 112, 39 C.M.R. at 112. At that point "Luczko was in the process of recocking his pistol ... he said nothing to the accused in response to the question, but raised his weapon, took careful aim, and fired." As to the government's contention that Keenan was liable as a principal of Corporal Luczko, the Court responded:

> The inexorable quality of his actions and his total disregard of the accused and the others indicate that he did not look to anyone for encouragement or assistance. In these circumstances, the board of review could have determined that the accused's question was only a tentative offer to help, which was rejected by Luczko. It could, therefore, have properly concluded that the accused did not aid or abet Luczko in his deadly assault upon the woman.

*Id.* at 113, 39 C.M.R. at 113. Moreover, in that case the Board of Review apparently utilized its fact-finding power in determining the accused's culpability; so it is unclear whether the Court's opinion was addressed to the issue of legal sufficiency. In any event, the facts of the case at bar are quite dissimilar; appellant's assistance was not rejected and, instead, he made it possible for White to consummate the offense at that particular moment.

*United States v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), held that mere presence in a car as a passenger was insufficient to establish complicity in possession of contraband by another occupant of the vehicle. Of course, in the case at bar the Government does not rely solely on

appellant's presence in the room where the drug sale took place. In *United States v. Peoni*, 100 F.2d 401 (2nd Cir. 1938), Judge Learned Hand observed that liability as an accessory has "nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct" but instead demands

> that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, "abet"—carry an implication of purposive attitude towards it.

*Id.* at 402.[4] In the case at bar appellant's conduct met this test. He performed an act which all the parties recognized was necessary to consummate the sale of the marihuana at that particular time. He participated as if he wished "to make it succeed" and he had a motive for desiring such success—before the transaction appellant's assets were $16 in cash and a claim against White for approximately $4; but, when the sale was completed, he possessed a $20 bill.

In *Morei v. United States*, 127 F.2d 827 (6th Cir. 1942), Dr. Platt, who was one of the defendants, had given an informer the name of defendant Morei as one from whom narcotics could be purchased. On this evidence the doctor was convicted of an ensuing sale by Morei to the informer. In reversing the conviction, the Court commented that

> the only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose horses in order to stimulate them in racing. This is not the purposive association with the venture that, under the evidence of this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact.

4. Although the discussion in *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938), relates to an accessory before the fact, Judge Hand's test applies to Burroughs even though his liability is based on a different aspect of the law of principals. This is so because, after "enactment of

statutes making aiders and abettors, and accessories, liable as principals, many courts have indiscriminately referred to accessories as aiders and abettors." *Morei v. United States*, 127 F.2d 827, 831 (6th Cir. 1942).

Id. at 832. This precedent might apply here if the evidence showed only that appellant told Private Johnson she might buy marihuana from Private White. However, in the case at hand, appellant—according to his own oral statement—suggested to White that he sell marihuana from his "stash" and then participated in the actual mechanics of consummating the sale.

In *United States v. Johnson*, 513 F.2d 819 (2nd Cir. 1975), the defendant successfully appealed from a conviction on charges that he conspired to import methamphetamine into the United States and aided and abetted the importation. However, the evidence showed little more than the defendant's presence in a car in which the drugs were being imported while concealed behind a front door panel and his making false exculpatory statements to law enforcement officials. Evidence was lacking that Johnson had sought by his actions to make the crime succeed. Contrariwise, in the case at bar, appellant's "purposeful behavior" (*id.* at 823) suggests that he wanted White to consummate the sale to Private Johnson.

In *United States v. Terrell*, 474 F.2d 872 (2nd Cir. 1973), the Court of Appeals recognized:

> "[K]nowledge that a crime is being committed, even when coupled with presence at the scene," *United States v. Garguilo*, 310 F.2d 249, 253 (2nd Cir. 1962), without more, however, is generally insufficient to prove aiding and abetting.

Even so, the Court concluded that driving a car in which a drug sale took place was sufficient to constitute aiding and abetting, for this action "enabl[ed] the sale to be effectuated in the relative concealment of a moving automobile in the early morning hours." *Id.* at 875. Similarly, in the case at bar the making of change "was . . . a transactional element of the crime." Moreover,

while in *Terrell* "there was no evidence" that the principal "shared in the proceeds of the venture," *id.* at 876, Burroughs did share in the proceeds by exchanging his claim against White for $4 in cash.[5]

In *United States v. Kelton*, 446 F.2d 669 (8th Cir. 1971), the defendant's conviction for being a principal in a bank robbery was set aside, since the Court concluded "that there . . . [was] no evidence on the present record that the defendant knew there was to be a robbery or that he helped in any way to carry it out." *Id.* at 670. Contrariwise, Burroughs knew that there was to be a sale of marihuana and he helped "carry it out."

In *Roberts v. United States*, 416 F.2d 1216 (5th Cir. 1969), three defendants had been convicted on two counts of passing counterfeit currency and on a third count of conspiring to pass it. The conviction of defendant Bookout was reversed since, although she knew of the conspiracy, on the one occasion when she was present and a conspirator passed counterfeit currency, her actions indicated that she "was not agreeable to becoming a partner in the conspiracy, the object of which was to pass the money." *Id.* at 1220. Furthermore, her destruction of some of the counterfeit money after one of the conspirators had been apprehended did not constitute aiding or abetting "in the passing of the counterfeit currency because that was already an accomplished fact"; and she had not "been charged . . . as an accessory after the fact on the basis of the destruction of the money as helping" the person who passed the counterfeit money "escape detection or punishment." *Id.* at 1221.[6] In the case at bar, the acts of the appellant on which the Government relied for conviction occurred before, rather than after, the sale of marihuana; demonstrated more than mere presence of

5. Apparently appellant's claim against White was unliquidated—"more or less" $4. By participating in the transaction, appellant removed any uncertainty as to the amount he would collect with respect to his claim.

6. The conviction of the other two defendants was affirmed, although based largely on their oral statements to a Secret Service agent after

their arrest. The Court's rejection of an argument that the statements could not be used to support the jury's verdict would also dispose of any contention in the case at bar that the Government could not use appellant's oral statement to the CID agent in establishing his guilt as a principal.

appellant and his knowledge of the crime; and in no way indicated that he "was not agreeable to" the commission of the crime. Instead, appellant facilitated in a significant way the commission of the crime, and by so doing he received a tangible benefit—payment of a debt owed to him.

In *United States v. Garguilo, supra,* two of the judges voted to reverse the conviction of one defendant because the trial judge had not instructed "the jury with extreme precision," *id.* at 254, and his failure might have been prejudicial since the case was borderline as to the legal sufficiency of the evidence.[7] After quoting Judge Hand's language in *United States v. Peoni, supra,* the majority opinion remarks:

> It is true, as the Government urges, that evidence of an act of relatively slight moment may warrant a jury's finding participation in a crime. Thus, it would have been enough here if the Government adduced evidence from which the jury could find, in addition to guilty knowledge, that Macchia had carried the negative or driven the car.

*Id.* at 253. If, under the circumstances of *Garguilo,* a driver may be deemed a principal, we see no reason why in the present case a money-changer cannot be held criminally liable as a principal.

In *Johnson v. United States,* 195 F.2d 673 (8th Cir. 1952), a conviction for transporting a car in interstate commerce was reversed because there was no evidence "that defendant" who was a passenger, "had any control over the movement of this car." *Id.* at 676. The Court observed "that the mere fact that one is present at the scene of a crime, even though he may be in sympathy with the person committing it, will not render him" a principal. *Id.* at 675–76. However, unlike that case, the actions of Burroughs facilitated the commission of the crime and so went beyond presence and sympathy.

*United States v. Johnson,* 334 F.Supp. 982 (WD Mo.1971), *aff'd,* 462 F.2d 608 (8th Cir. 1972), *cert. denied,* 409 U.S. 952, 93 S.Ct. 299, 34 L.Ed.2d 224 (1972), which is also cited by appellate defense counsel, reiterates the general principle "that proof of mere association with the actual offenders and proof of mere presence at the scene of a crime, as opposed to proof of some additional act of participation, is not sufficient even to support a verdict of" being a principal. *Id.* at 987. However, we note that the *Johnson* court cited with approval footnote 4 of *United States v. Barber,* 429 F.2d 1394, 1397 (3rd Cir. 1970), which states:

> Thus, the fact that an individual has served as a lookout during the commission of a crime is a clear indication of participation in the wrongdoing. *Long v. United States,* D.C.Cir.1966, 360 F.2d 829. Verbal encouragement of an assault has been held sufficient evidence of complicity in the wrongdoing. *Kuney v. Dutcher,* 1885, 56 Mich. 308, 22 N.W. 866. Those who make no assault but undertake to intimidate the victim and block his escape are criminally associated with a robbery. *Williams v. United States,* D.C.App.1963, 190 A.2d 269. Flight from the scene of the crime with the actual perpetrators has been said to justify the same inference. *Corbin v. United States,* D.C.App. 1968, 237 A.2d 466. Even remaining with a group after disclosure of the intention of members of the group to commit a crime has been held to be sufficient evidence of association with the criminal venture. *People v. Hill,* 1968, 39 Ill.2d 125, 233 N.E.2d 367.

The precedents cited in that footnote certainly do not aid Burroughs. His suggestion to White that he sell marihuana to Private Debra Johnson from his own "stash," since appellant had no marihuana, could be viewed as "[v]erbal encouragement" of the ensuing drug sale; and appellant not only remained in the room with

---

7. Of course, this case was decided long before it was established that a new trial would not be permitted if the evidence were legally insufficient and that in such event the charges should be dismissed. *Burks v. United States, supra.*

Thus the appellate court was free to order a new trial for the instructional defects without ruling finally on evidentiary sufficiency. The third judge would have affirmed the conviction.

White while the sale was negotiated but also helped to execute the transaction.[8]

In sum, after examining the precedents which appellant has brought to our attention, we remain convinced that the evidence in the case at bar is sufficient to sustain his conviction.

### Issue II

■ The staff judge advocate's review recited the evidence and the elements of the offense and contained this subparagraph which constituted his opinion as to the legal and factual sufficiency of the evidence:

> The evidence of record, as summarized above, is competent and adequate to establish beyond a reasonable doubt each and every element of the offense of which the accused was convicted. The accused orally admitted to referring the purchasers to Private White to obtain marihuana. He also admitted to providing change so that the transaction could be consummated.

There was no discussion of the law of principals under Article 77 either in the review or in an addendum prepared after a *Goode*[9] response had been submitted.[10]

Appellate defense counsel contend that, under the Manual for Courts-Martial, United States, 1969 (Revised edition), *see also United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958), a staff judge advocate must not only provide an "opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity . . . and a specific recommendation as to the action to be taken" by the convening authority, but also must supply reasons for his opinions and recommendations. Para. 85*b*,

Manual, *supra.* In turn, it is claimed that the reasons here are inadequate since the staff judge advocate failed to relate the evidence to the applicable law.

In *United States v. Cordova*, 7 M.J. 673 (A.C.M.R.1979), the appellant had been "convicted of rape under the theory of principals, [but] the post-trial review made only the barest mention of this complex legal theory and did not attempt to apply the theory to the facts of this case." The court, in holding that the review failed to meet the Manual's requirements, stated: "Without an explanation of the law of principals and its application to this case, the convening authority was not given the information he needed to determine the correctness of the findings 'in law.'" *Id.* at 675. In the case at bar, where the staff judge advocate did not even refer to the applicable legal theory, the same logic is applicable. *See United States v. Cruse*, 21 U.S.C.M.A. 286, 45 C.M.R. 60 (1972). Moreover, just as the failure to instruct a "jury with extreme precision" on the law of principals may be especially prejudicial when legal sufficiency is borderline, *see United States v. Garguilo, supra* at 254; *United States v. Terrell, supra* at 876, so, too, in a case like that at bar—which is a close one on the issue of evidentiary sufficiency—it was especially important that the staff judge advocate properly advise the convening authority on the law of principals under Article 77.

### *Disposition*

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge

---

8. The room in which the transaction took place was appellant's and not White's, so his remaining in the room is a rather neutral circumstance. If Burroughs had accompanied Private Johnson to the scene of the drug buy, the circumstances would be more incriminating. *See* Annotation, 42 A.L.R.3d 1072, 1076–81.

9. *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

10. The brief by appellate defense counsel remarks:
   The Review was prepared in a rambling, block-style format, with unnumbered and un-

labeled paragraphs, which is unique to this general court-martial jurisdiction. Perhaps as a consequence of this format, the Review omits a necessary element.
Certainly the format used in this review was less conducive to a convening authority's understanding of the record than the format employed in many of the reviews in the records of trial which we read. However, merely to say that a review could be more specific or more detailed is not to conclude that it is legally insufficient.

Advocate General of the Army for transmittal to a convening authority for a new review and action.

Judge COOK concurs.

FLETCHER, Judge (concurring in part and dissenting in part):

I conclude that the record supports a finding by the trial judge that appellant was guilty as charged.

The law from this Court, not the Uniform Code of Military Justice, requires the staff judge advocate in his post trial review to set forth and give definition to all applicable principles of law. I disagree with this requirement.

In all cases, trial judges will have applied the facts to the law either by findings or by approving the verdict announced by the jury and a lawyer, counsel to command, will have applied the facts to the law before the post trial review is submitted to the convening authority. To continue the fiction that convening authorities will make findings as to the law and facts different from the conclusions of their counsel puts military justice out of focus.[1] To consider that command persons will independently determine the law rather than accept the conclusion of their counsel gives the perception that an educated guess is better than a well-reasoned legal conclusion. We are submitting to the public the wrong picture, for an educated guess does not equate in any way to a conclusion legally arrived at.[2]

In the present case, the facts set forth in the post trial review and the conclusion that they fall within the matter charged, are found to be correct by this Court. The fault my Brothers find is that the commander was not provided the opportunity to determine which gradation of gray in this area of the law was applicable. If this is to remain the interpretation of the law, we are unnecessarily diverting the commander's energy and attention from his pressing duty of preparation for defense of this country.

1. Article 6(b), Uniform Code of Military Justice, 10 U.S.C. § 806(b).

2. *United States v. Morrison*, 3 M.J. 408, 409 (C.M.A.1977) (Fletcher, C. J., concurring in the result).