SULLIVAN, Senior Judge
(concurring in the result):
Appellant was found guilty of the voluntary manslaughter of Private First Class (PFC) Waters, even though another soldier, Private Wilson, actually stabbed PFC Waters to death. Article 119, UCMJ, 10 USC § 919. The military judge instructed the members that they could find appellant guilty of this offense if they found that he had aided and abetted Private Wilson’s killing of PFC Waters. Article 77, UCMJ, 10 USC § 877. There is a key issue whether there was legally sufficient evidence admitted in this case showing that appellant aided or abetted Private Wilson’s voluntary manslaughter of PFC Waters. See generally Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Appellant initially challenges the legal sufficiency of his conviction on the basis that there was no evidence in this case that he knew the actual perpetrator, Private Wilson, had a knife and intended to stab PFC Waters with that knife. See generally 2 Wayne R. LaFave and Austin W. Scott, Substantive Criminal Law § 6.7 at 136 (1986). He heavily relies on several military cases for this argument. See generally United States v. Jackson, 6 USCMA 193, 203, 19 CMR 319, 329 (1955); see United States v. Foushee, 13 MJ 833, 835 (ACMR 1982); United States v. Hofbauer, 2 MJ 922, 925 (ACMR 1976). He also argues that his guilt as an aider and abettor of Private Wilson required proof that his kicking of PFC Waters assisted or incited Private Wilson in killing PFC Waters, rather than proof that it simply occurred after the stabbing, as shown in this case.
Article 119(a), UCMJ, states:
§ 919. Art. 119. Manslaughter
*287 (a) Any person subject to this chapter who, with an intent to kill or inflict great bodily harm, unlawfully kills a human being in the heat of sudden passion caused by adequate provocation is guilty of voluntary manslaughter and shall be punished as a court-martial may direct.
(Emphasis added.) On its face, it requires that a perpetrator of this offense have “an intent to kill or inflict great bodily harm” on the alleged victim.
Article 77, UCMJ, defines as a principal to an offense:
§ 877. Art. 77. Principals
Any person punishable under this chapter who
(1) commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission; or
(2) causes an act to be done which if directly performed by him would be punishable by this chapter; is a principal.
In United States v. Thompson, 50 MJ 257, 259 (1999), we further stated:
For an accused to be a principal under Article 77, and thus to be guilty of the offense committed by the perpetrator, he must (1) “assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense”; and (2) “share in the criminal purpose [or] design.” Para. lb(2)(b), Part IV, Manual for Courts-Martial, United States, 1984.
(Emphasis added); see also para. 156, Manual for Courts-Martial, United States, 1969 (Rev. ed.).
In light of the above, the Government was required to show a particular mens rea to find appellant guilty of aiding and abetting the voluntary manslaughter of PFC Waters. In particular, it was required to show:
(1) Private Wilson intended to kill PFC Waters or inflict great bodily harm upon him; and
(2) Appellant consciously shared that criminal intent.
See United States v. Burroughs, 12 MJ 380, 383 (CMA 1982). Appellant’s main argument is that he could not legally share Private Wilson’s criminal intent because he did not know Private Wilson had a knife or that he intended to use that knife on PFC Waters. See United States v. Jackson, supra I must disagree.
Paragraph lb(4), Part IV, Manual for Courts-Martial, United States (2000 ed.), states:
(4) Parties whose intent differs from the perpetrator’s. When an offense charged requires proof of a specific intent or particular state of mind as an element, the evidence must prove that the accused had that intent or state of mind, whether the accused is charged as a perpetrator or an “other party” to crime. It is possible for a party to have a state of mind more or less culpable than the perpetrator of the offense. In such a case, the party may be guilty of a more or less serious offense than that committed by the perpetrator. For example, when a homicide is committed, the perpetrator may act in the heat of sudden passion caused by adequate provocation and be guilty of manslaughter, while the party who, without such passion, hands the perpetrator a weapon and encourages the perpetrator to kill the victim, would be guilty of murder. On the other hand, if a party assists a perpetrator in an assault on a person who, known only to the perpetrator, is an officer, the party would be guilty only of assault, while the perpetrator would be guilty of assault on an officer.
(Emphasis added.)
Again, I note that Article 119, UCMJ, requires that the actual perpetrator of voluntary manslaughter have an intent to kill or inflict great bodily harm. Article 77, UCMJ, and our case law required trial counsel to show that appellant had the same intent. Clearly, there is no express legal requirement in military law that forced trial counsel to show appellant knew Private Wilson had a knife or intended to stab PFC Waters with that knife.
The D.C. Circuit in United States v. Walker, 99 F.3d 439, 442-43 (D.C.Cir.1996), has spoken to this intent issue under a statute quite similar to Article 77, UCMJ. It said:
*288 The government’s brief, although decidedly uncomfortable with and even critical of the footnote in North and our language in Salamanca, does not clearly indicate why appellant’s reliance of those cases is misplaced. That seems to be because the government reads North and Salamanca’s use of the phrase “same intent” as requiring an intent which is “matched” — which would mean that an aider and abettor must have exactly the same knowledge and disposition as the principal. But that is an overreading; no court has ever so held, as it virtually would eliminate aider and abettor liability. Appellant, ironically, has it right when, in defense of our “same intent” language, he points to cases that have instead used the term shared intent, see, e.g., Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); United States v. Martiarena, 955 F.2d 363, 366 (5th Cir.1992); see also United States v. Garrett, 720 F.2d 705, 713 (D.C.Cir.1983), cert. denied, 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984); United States v. Raper, 676 F.2d 841, 850-51 & n. 1 (D.C.Cir.1982), which suggests that the intent of the aider and abettor must be shown, in crucial respects, to overlap with (but not necessarily match) the criminal intent of the principal. For example, in United States v. Edmond, 924 F.2d 261, 267 (D.C.Cir.), cert. denied, 502 U.S. 838, 112 S.Ct. 125, 116 L.Ed.2d 92 (1991), we noted that if a jury thought an aider and abettor had premeditated a murder, but enlisted an executioner at the last possible moment, a jury “could consistently convict the abettor of first-degree murder while finding the actual perpetrator guilty only of [second-degree murder].”
The North ease footnote upon which Salamanca relied, although it used the cryptic and somewhat ambiguous phrase “same intent,” must be read as meaning no more than the traditional notion of shared intent because the note explicitly relied on United States v. Sampol, 636 F.2d 621, 676 (D.C.Cir.1980), and it did not purport to alter the principles we applied there. In Sampol, we had explained that an aider and abettor and a principal must have a “common design or plan,” but the aider and abettor “need not perform the substantive offense, need not know its details, and need not even be present.” Id. (internal quotation marks and citations omitted). And we explicitly recognized that once a common design is established, the aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those consequences were not originally intended.
(Emphasis added.)
I agree with a concert of purpose approach to liability of an aider and abettor under Article 77, UCMJ. See United States v. Burroughs, 12 MJ at 380. In my view, the aider and abettor must share the intent of the perpetrator, not the knowledge of his particular means of accomplishing that intent. See para. lb(4), Part IV, Manual, supra; see also United States v. Searan, 259 F.3d 434, 444 (6th Cir.2001). This case is not like United States v. Jackson, 6 USCMA at 193, 19 CMR at 319, where evidence was admitted showing the appellant intended to assault the victim, but he did not intend to kill the victim or inflict great bodily harm upon him. See also Commonwealth v. Hogan, 379 Mass. 190, 396 N.E.2d 978 (1979). Moreover, this is not a case where the predicate criminal statute violated required proof that a certain type of weapon was used. See United States v. Spinney, 65 F.3d 231, 236-39 (1st Cir.1995); United States v. Rosario-Diaz, 202 F.3d 54, 63-64 (1st Cir.2000).
In sum, Article 77, UCMJ, in my view, requires only that an appellant share a common intent to accomplish the essential elements of the resulting felony. See United States v. Jacobs, 1 USCMA 209, 211, 2 CMR 115, 117 (1952). Jackson, Foushee, and Hofbauer apply only where the evidence shows that the perpetrator and the aider and abettor had different criminal intents. These cases are simply inapplicable where the accomplice’s own conduct unequivocally shows his sharing of the perpetrator’s intent to kill or grievously harm the victim.
Turning to the actus reus question in this case, evidence was admitted that showed Pri *289 vate Wilson straggled with PFC Waters both before and after appellant joined in the kicking of the victim. Appellant’s conduct in participating in this group assault on PFC Waters could be rationally viewed as providing continued incitement for the killing of PFC Waters by Private Wilson or assisting him in the killing by preventing PFC Waters’s escape and survival after he was stabbed. I agree with the majority opinion that this evidence was legally sufficient to establish appellant as an aider and abettor.
Moving to the other issues in this case, I conclude Issue II is mooted by my resolution of the first granted issue. In my view, Private Wilson’s multiple uses of a knife in the context of the gang stalking and beating of PFC Waters was clear evidence that he intended to kill or greatly harm PFC Waters. Moreover, appellant’s extended involvement in the stalking and willing participation in this vicious gang beating of PFC Waters was evidence that he shared this criminal design. In this context, whether the stabbing of PFC Waters was a natural and probable consequence of the kicking of PFC Waters need not be addressed. See generally para. 156, 1969 Manual, supra (delineating a natural or probable consequence liability theory for aiders and abettors where different crime intended by aider and abettor).
Finally, as to Issue III, I do not find that reversible error occurred as a result of the military judge’s failure to instruct on the lesser offense of involuntary manslaughter. Appellant could be found guilty of this lesser offense if evidence was admitted showing that he only intended to assault the victim, not kill or inflict great bodily harm upon him. See Article 119(b), UCMJ. No such evidence was admitted in this case.
The Government’s evidence in this case shows a brutal gang attack on PFC Waters, which appellant actively participated in by kicking the victim. Appellant essentially disputed the Government’s proof of his participation in the attack on the basis that it was supported by untrustworthy testimony from the Government’s principal witness. There was no evidence suggesting a less dangerous attack was intended by appellant in this case. If the Government’s evidence was not accepted by the members, appellant would be found not guilty. In these circumstances, I see no error in the judge’s unobjeeted-to ruling not to give an instruction on involuntary manslaughter in these circumstances. Cf. United States v. Davis, 53 MJ 202, 205-06 (2000); United States v. Wells, 52 MJ 126, 130 (1999)(appellate relief warranted only if appellate court is convinced that the evidence issues are such that a rational jury could acquit on a charged crime and convict on a lesser crime).